Rafael Bernardino, Jr.  SBN  118690
Jason A. Hobson      SBN  184134
Andrew Kierstead     SBN  132105
Peter Wasylyk        Pro Hac Vice
HOBSON, BERNARDINO & DAVIS, LLP
444 South Flower Street, Suite 3100
Los Angeles, California 90071
Telephone:    (213) 235-9190
Facsimile:    (213) 235-9197
rbernardino@hbdlegal.com
jhobson@hbdlegal.com
akierstead@hbdlegal.com
pwasylak@hbdlegal.com

Attorneys for Plaintiff NICHOLAS FORD

[Additional counsel appear on the signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA CLARA DIVISION

| | |
|---|---|
| NICHOLAS FORD, a natural person; individually and on behalf of all others similarly situated,<br><br>                               Plaintiffs,<br><br>vs.<br><br>APPLE INC., a California corporation,<br><br>                               Defendant. | Case Number:<br><br>**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND RESTITUTION**<br><br><br>**DEMAND FOR JURY TRIAL** |

**COMES NOW**, PLAINTIFF NICHOLAS FORD, on behalf of himself and those similarly situated, by and through his attorneys complaining of Defendant and each of them, and demanding a trial by jury to those claims for relief to which such a right attaches, respectfully submits this Complaint alleging as follows:

## I.    INTRODUCTION.

1.    Nicholas Ford (hereafter also referred to as "Ford") individually, and on behalf of all others similarly situated, (collectively referred to as "PLAINTIFFS"), by and through PLAINTIFFS' undersigned counsel (hereafter also referred to as "Counsel,") bring this civil action lawsuit against Apple Inc., a California corporation (hereafter also referred to as "Defendant" or "Apple") as an individual complaint on behalf of himself, and as a putative class action complaint (hereafter also referred to as "Class Action") on behalf of himself and a proposed world-wide class of similarly situated individuals as heretofore defined (hereafter also referred to as "Class" or "Class Members.")

2.    Pursuant to *Federal Rules of Civil Procedure* 23(a), (b)(2), (b)(3), and (c)(4) on class actions, PLAINTIFFS' bring this Class Action on behalf of themselves and Class Members to redress Defendant's acts and omissions relating to Defendant's unlawful conduct of purposefully and knowingly releasing iPhone operating system software updates (including most recently iOS 10.2.1, and iOS 11.2.0 among earlier software updates) to iPhone models 6, 6 Plus, 6s, 6s Plus, SE, 7, and 7Plus (hereafter collectively also referred to as "Older Model iPhones") that significantly slow the performance speeds of the system of chip processing units (hereafter also referred to as "processors") (referred to herein as the "software slowdown") of the Older Model iPhones as a part of a greater scheme both to conceal material design defects within the Older Model iPhones that caused them to shutdown unexpectedly (the "battery/processor defect") and to drive sales of newer, more expensive model iPhones.

3.    PLAINTIFFS seek damages and equitable relief on their own behalf and on behalf of the Class Members.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

4.     PLAINTIFFS allege the following facts and claims, on their own behalf and on behalf of the Class Members, based upon personal knowledge as to PLAINTIFFS' own acts and upon their information and belief as to all other matters.

## II.     BACKGROUND.

5.     Apple, Inc. is the world's foremost and best-known maker of portable electronic devices, including the highly successful iPhone line of smart-phones, which if it did not invent the smart-phone as we know it today, certainly set the bar by which all other competitors have been measured since.  By 2017, just ten years after Apple introduced its first iPhone model, Apple had sold over **1.2 billion** iPhones worldwide and had earned approximately **$700 billion** in revenue from those sales.  Throughout 2017, Apple sold another 200 million iPhones across the globe with iPhone sales alone accounting for 69% of Apple's total revenue to the tune of approximately $54 billion in sales in the first quarter of 2017 alone.  Apple enjoys such sales success in part because of its brand-image and advertising and marketing campaigns, which are synonymous with quality, reliability, speed and streamlined design.

6.     However, by mid 2016 it became increasingly apparent that nearly all the recent iterations of the Apple iPhone carried a serious hardware defect that caused unexpected and unrecoverable shutdowns. The cause of these shutdowns may seem technical, but is readily understandable: The speed for which Apple's products are known comes from powerful processing units which perform calculations and render graphics on its smart-phones at blinding speeds. However, as these processing units become faster and more powerful, they also become more power-hungry.  This presents a dilemma for all electronics manufacturers, who must balance the device's battery-size, capacity and ability to produce peak amounts of power with the expected peak power-use of the processing units.  A further complication is that all batteries, over time, lose both their overall capacity and their ability to produce peak power output as cells within the battery die, and resistance in the battery increases.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

7. The amount of power that the processing unit requires during its daily operation varies: sometimes very little; sometimes a great deal; and ideally, its battery is designed and capable of producing enough peak power to keep pace with even the processor's highest demands. A battery and processor must be designed such that even as the battery ages and loses performance, it will still be capable of meeting the processor's peak power demands for years to come. This too is a tight-rope for manufacturers like Apple to walk, because a battery must be as small, and light and cheap as possible, while still having the power necessary to run the processor, both when new and as they age.

8. Electronics manufactures are aware of this catch-22, and design batteries to be more powerful than they need to be so that as they grow weaker, they still have the ability to meet the processor's peak power demands.

9. Apple's iPhone 6 for example uses Apple's proprietary A8 System on a Chip ("SoC") as its processor. This processor, like many other SoCs, has low power cores and high power cores to extend battery life. The low power cores perform most of the day-to-day functions of the iPhone, and the high power cores switch "on" for more graphically intensive activities such as "gaming," recording and editing video, running certain applications ("apps") at other times. When the high power cores switch on, they draw peak power from battery, which the battery should be designed to be able to meet for the lifetime of the smart-phone.

10. In the months leading up to November, 2016 Apple became aware of iPhone user reports of Apple iPhones unexpectedly shutting off. Apple immediately recognized the problem: it had made a titanic design defect. The batteries that were capable of meeting peak processor demand when new had begun to age, and as they aged, the batteries were not designed with enough power to continue to meet the peak demands of the processors. When processor demand for peak power outpaced the ability of the battery to supply it, the processor simply switched off and it wasn't until users physically plugged the device into a wall power outlet that their iPhone would turn back on.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

11.     When designing its new lines of iPhones, Apple had incorrectly assessed the ability of its batteries to keep pace with its processors as they aged.  Apple had designed a battery that was small and light and cheap, but had failed to give it enough peak power output to continue to meet iPhone processor demands as the iPhone battery grew older and weakened.  The result was that iPhones worked as expected when new, but even after a few months or years, began to cease functioning, i.e., switching off at random intervals, when the iPhone processor required too much power of its flagging iPhone battery.

12.     By the time the problem was discovered, it was too late; Apple had already produced and sold hundreds of millions of iPhone models with this battery/processor design defect and the symptoms of that defect were only beginning to manifest themselves.  iPhone Users with the oldest iPhones or which had completed the most charge-cycles began to experience the problem first.  Apple knew that the few reports they received were just a shadow of what as to come: a problem endemic to hundreds of millions of iPhone products and as those products and their batteries aged, the problem would become apparent to some five hundred million Apple iPhone owners around the world, a problem which rendered their expensive products largely useless to the consumers who relied upon them in almost every facet of their daily life.

13.     Apple faced a cross-roads: Apple could be transparent with its hundreds of millions of customers and inform them of the problem and face the dire financial consequences of fixing or replacing all affected iPhones; or, Apple could say nothing and clandestinely conceal the problem with an undisclosed software update, hopefully with neither its customers nor shareholders any the wiser. Apple chose the latter.

14.     The January 2017 release of iOS 10.2.1, was a seemingly routine update of Apple's operating systems for its iPhones and other devices. In an attempt to stave off looming disaster, Apple released iOS 10.2.1 to all iPhone owners to download. Absent from the release-notes were a few lines of code among millions which artificially slowed down the processors in Apple's iPhones.  In computer science parlance, Apple concealed within the iOS updates secret

commands which "underclocked" the processors in the affected phones, causing them to perform calculations at a slower rate than the hardware was capable of supporting, and slower than they operated before the iOS updates. Like the governor on an engine, the command lines artificially limited the maximum rate at which the iPhone processors could operate.

15.     Running at a new, slower rate after the update, the processors in Apple's iPhones would demand less power during peak operation. This diminished requirement for peak power would reduce and eliminate instances where the iPhone's processor would outpace its battery; meaning that even in their weakened condition, the older batteries could supply enough peak power to meet the reduced demands of the processors.  This "fix" would prevent outright shutdowns and would imperceptibly slow the customers' iPhones and would scale, meaning as the batteries continued to grow weaker, the fix would continue to slow the iPhone's processors so that demand never outpaced available power.

16.     The impact to iPhone users was supposed to be barely noticeable, and the likelihood of detection was extremely low.  After the iOS 10.2.1 release, iPhones would begin to run more slowly, but it would be nearly impossible for an iPhone user to accurately compare how quickly their iPhone had run prior to the release of iOS 10.2.1 to how slowly it ran afterward. Because every iPhone in the world would be updated, there would be nothing left to compare to. Apple concealed the problem; Apple concealed the solution; Apple concealed that its solution would slow its customer's iPhones; all in the hopes that it could clandestinely skirt the ramifications of its product defect and avoid financial disaster.

17.     Apple also realized secondary gains from its software "fix."  Without understanding the battery/processor issues plaguing their iPhones, and without knowledge that their iPhone's performance was artificially hobbled, iPhone users were left to conclude that their iPhones were slow because they were obsolete, and that the only way to get a decently fast iPhone was to purchase a new iPhone model.  By slowing down older iPhones, the gap in performance between new iPhone models and Older Model iPhones would be highly and increasingly evident, and would only grow with the weakening of their batteries, leaving iPhone

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

1    users no choice but to upgrade to brand-new iPhone models for the princely sum of

2    approximately $1,000 apiece.

3         18.    Apple was perfectly content with this.  For nearly a year after iOS 10.2.1 was

4    released, Apple remained silent and no one was the wiser.  Disaster no longer loomed and iPhone

5    users would be forced to upgrade to new iPhones sooner and at an unprecedented rate.  Apple

6    had turned disaster into an marketing opportunity for even greater profits.

7         19.    While rumors swirled that user's iPhones seemed slower, or at least not as fast as

8    they once were, there was no way to quantify these inklings or give them credence.  However, on

9    December 9, 2017, a little-known Reddit-user by the handle "TeckFire" posted online

10   benchmarks (measurements of the speed with which a phone's processor performs its

11   computations) of his iPhone 6 operating on its old battery, and again after he had replaced it with

12   a new battery.  The iPhone's processor's speed had remarkably increased over 50% but this was

13   incongruous: **a new battery alone should not have had any impact on the processor speed.**

14   Then on December 18, 2017, spurred by the ensuing discussion from TeckFire's post, John Poole

15   a software engineer, of Geekbench.com posted a blog post that asked:

16             *"A Reddit post from last week has sparked a discussion regarding iPhone

17       performance as a function of battery age. While we expect battery capacity to
         decrease as batteries age, we expect processor performance to stay the same.

18       However, users with older iPhones with lower-than-expected Geekbench 4 scores
         have reported that replacing the battery increases their score (as well as the

19       performance of the phone). What's going on here?"*

20        20.    After analyzing processor speed tests ("benchmarks") from some 100,000

21   Geekbench users' various iPhone models, Poole found that immediately after the implementation

22   of iOS 10.2.1, users' iPhone processor began to run more slowly, and that the slowdown

23   happened again after iOS 11.2.0 was implemented, only even worse.  Noting that the diminished

24   performance came too abruptly to be caused by an aging battery alone, Poole and others correctly

25   ascribed the massive slowdowns to Apple purposefully and secretly throttling down the Older

26   Model iPhones with each software patch.

27

28

7

21.     A processor's  speed is measured and quantified in megahertz ("Mhz") and gigahertz ("Ghz"), the more megahertz or gigahertz a processor has, the faster it is, not unlike horsepower in automobiles.  For example, Apple advertises the iPhone 6 as having a processor speed of 1.4 Ghz.  However, iPhone 6 users who were intrigued by Pooele's findings ran the processor speed tests on their own phones to find that the actual speed of their processors after the iOS 10.2.1update was 600Mhz; **less than half as fast as Apple advertises**.

22.     Concluding his findings, Pooele noted that because Apple did not disclose the software slowdown to its users, "[t]his fix will also cause users to think, 'my phone is slow so I should replace it' not, 'my phone is slow so I should replace its battery.'"  In response to these and other reports by the media, on December 20, 2017, Apple published the following statement:

> "Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices.  Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components. Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future."

23.     Citing generally a desire to protect user experience, conspicuously absent in Apple's statement was any mention of the underlying battery/processor hardware defects created by Apple which necessitated the software slowdown in the first place.  And were it not for TeckFire and Poole's findings, Apple likely *never* would have disclosed anything at all to the public or its shareholders or the investing public.

24.     During this time Apple continued to falsely advertise the speed of its processors in the Older Model iPhones, claiming that they were as fast as they had ever been and failing to disclose the slower rate at which its products operated and the existence of the design defect.

25.     Apple made a mistake in designing the iPhone 6 and later models.  By the time they realized that this design defect existed, they had already produced and sold several hundred million iPhones which carried the processor/battery design defect.  Instead of admitting the

8

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

existence of the defect, which would cost tens or hundreds of millions, perhaps billions of dollars to fix, Apple sought to conceal the existence of the iPhone defect altogether by clandestinely releasing secret software updates that significantly impacted the performance of consumer's iPhones without their prior knowledge or subsequent consent.

26.     Hoping in part to avert financial disaster, dashed shareholder forecasts and to realize secondary gains in the form of even greater sales as users discarded their ever-slowing old models in exchange faster, more expensive iPhones, Apple perpetuated its misrepresentations and omissions for at least one year, and even released another software update in iOS 11.2.0 to apply the same slowdown protocols to even the brand-new iPhone 7 models.  Even after its false and misleading charade came to light, Apple published a statement declaring that it intended to continue to slowdown its customers devices in the future. Through this calculated, protracted scheme Apple chose to defraud and to betray the trust of hundreds of millions of its loyal customers in order to protect and reap ever greater profits.

27.     To redress and punish these astounding violations of law, PLAINTIFFS and those similarly situated world-wide, by and through their attorneys, seek a judgment requiring Defendants to pay damages, restitution, civil penalties, disgorgement of its ill-gotten gains and attorneys' fees, costs, and expenses.  PLAINTIFFS also request that this Honorable Court issue an order requiring Apple to cease its unlawful practice of slowing down its users' iPhones and other electronics, and fully disclose all aspects, changes and modifications to users' devices in all future software updates, and cease its false and misleading advertisements as to the performance of its products, in addition to granting any other equitable relief authorized by law.

## II.     JURISDICTION AND VENUE.

28.     This Honorable Court has subject matter jurisdiction over this lawsuit and all of its asserted state law claims pursuant to the *Class Action Fairness Act of 2005*, 28 U.S.C. § 1332(d) (hereafter also referred to as "CAFA") because this lawsuit is a class action lawsuit and the amount in controversy, the aggregated claims of the individual Class Members, exceeds the

1  sum or value of five million dollars ($5,000,000.00), exclusive of interest and costs, and the

2  proposed Class includes more than one hundred (100) Class Members, more than one of whom is

3  a citizen who resides in a state other than California where Defendant resides, and more than

4  two-thirds of the proposed Class Members are citizens of different states from the State of

5  California where the Defendant resides.

6      29.    This Honorable Court has personal jurisdiction over the Defendant because the

7  Defendant engages in substantial and continuous business in this judicial district.  Defendant

8  conducts a major part of its national corporate activities in this judicial district.  Such activities

9  include are but not limited to its extensive advertising campaign in this judicial district,

10  maintaining retail outlets in this judicial district, selling Older Model iPhones among other

11  electronics in this judicial district and pushing its iOS software update to existing Older Model

12  iPhone owners located in this judicial district which the Defendant knew would cause the

13  consumers in this judicial district to update their Older Model iPhones with the iOS software

14  update.

15      30.    This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 over

16  PLAINTIFFS' state law claims since the state law claims are closely related to the federal claims

17  such that they form part of the same case or controversy.

18      31.    Venue for this lawsuit properly lies in within the United States District Court

19  Northern District of California judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2),

20  because Defendant: (1) maintains its headquarters within this judicial district; (2) is authorized to

21  do business within this judicial district; (3) has done business within this judicial district; and (4)

22  has availed itself of the laws of the State of California as well as the laws of the counties and

23  cities which comprise this judicial district.  Additionally, a substantial part of the acts and

24  omissions giving rise to the claims in this Class Action took place within this judicial district

25  and/or emanated from this judicial district and therefore, Defendant resides in this judicial district

26  for venue purposes.

27

28

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

32.    Intra-district Assignment: A substantial part of the events or omissions which give rise to the claims in this action occurred in the county of Santa Clara, and as such this action is properly assigned to the Santa Clara division of this Honorable Court.

## III.    THE PARTIES.

### A.    PLAINTIFFS.

33.    Plaintiff, Nicholas Ford, is a natural person who at all relevant times relating to the allegations in this Complaint resided in the County of Los Angeles, California.

### B.    DEFENDANT.

34.    Defendant, Apple, Inc., is a California corporation that is organized and existing under the laws of the State of California, and has its principal place of business at 1 Infinite Loop, Cupertino, Santa Clara County, California 95014.

## IV.    FACTUAL ALLEGATIONS.

35.    Defendant designs, manufactures, markets, sells, and distributes smart-phones, referred to as iPhones, including all of the Older Model iPhones which are portable mobile electronic devices that, among other things, send and receive phone calls and text messages, take and record pictures and videos, search the internet and use various other applications.

36.    Defendant marketed the original model of the iPhone for sale in the United States on or about June 2007 and has subsequently marketed newer models of the iPhone.

37.    Defendant has generated over $700 billion dollars revenues from the sale of some 1.2 billion iPhones and currently retains approximately 15% of the worldwide market share for smart phones.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

38.     Older Model iPhones were advertised and marketed and sold world-wide by Defendant.

39.     Older Model iPhones operate using Defendant's proprietary, self-developed  iOS operating system.

40.     Defendant's iPhones contain physical components "hardware" including processors and batteries designed by Defendant.

41.     Defendant designed, engineered and manufactured or contracted to be manufactured each iPhone processor in each generation of the Older Model iPhones. Defendants' processors are "Systems on a Chip" meaning that they consolidate many functions dedicated to many other separate components in larger systems like laptops and desktop computers onto the processor itself to save space and improve efficiency.

42.     Defendant published the performance specifications of each processor as one of the defining features of each generation of the Older Model iPhones, including the speed of each processor.  These specifications are set forth below:

| APPLE'S ADVERTISED OLDER MODEL IPHONE PROCESSOR SPEEDS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | iPhone 6 | iPhone 6 Plus | iPhone 6S | iPhone 6S Plus | iPhone SE | iPhone 7 | iPhone 7 Plus |
| Release Date | Sept. 19, 2014 | Sept. 19, 2014 | Sept. 25, 2015 | Sept. 25, 2015 | Mar. 31, 2016 | Sept. 26, 2016 | Sept. 26, 2016 |

12

| Processor Model | A8 | A8 | A9 | A9 | A9 | A10 Fusion | A10 Fusion |
|---|---|---|---|---|---|---|---|
| Processor Speed | 1.4Ghz | 1.4Ghz | 1.85Ghz | 1.85Ghz | 1.85Ghz | 2.34Ghz | 2.34Ghz |

43.     The speed of processors is measure in Megahertz and Gigahertz and the amount of Megahertz or Gigahertz that a processor has is directly proportional to its speeds, i.e., more Megahertz or Gigahertz means more processing speed, which for smart-phone users means faster responses to inputs, better rendering of videos and videogames, less lagginess and quicker load times, and an overall superior user-experience.

44.     Processing speed in computers and smart-phones is analogous to horsepower in automobile engines, the more horsepower a car's engine has, the faster the car accelerates and likewise the more Gigahertz a processor has, the faster the phone operates, responds and the more computationally and graphically intensive applications it can run.

45.     At all relevant times herein, Defendant published the speeds of its processors as one of the key performance specifications of the Older Model iPhones.   At all times it asserted its processors were at least as fast and usually faster than processors in competitors' smart-phones and that they were superior for other reasons.

46.     Defendant, like other smart-pone manufacturers, touts the speed of its phone's processors as one of its defining features of its smart-phones and one of the reasons therefore that its smart-phones are better (i.e. faster) than that of its competitors.

47.     Consumers interested in purchasing a new smart-phone are looking for the best possible user experience.  Processor speed is one of the key factors that defines a modern day smart-phone and it is a critical factor upon which consumers rely when making their purchasing

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

decisions: More Gigahertz means a fast, snappy, well-functioning phone.  Fewer Gigahertz means a sluggish, slow, and underwhelming user experience.  Apple, in part because of its advertising and marketing campaigns, is well-known and recognized for delivering smart-phones that have fast, powerful processors.

48.     Processing speed is seen as perhaps the largest determining factor effecting the overall speed, responsiveness, and performance of a smart-phone, all of which contributes to a superior user experience.

49.     Among manufacturers, the speed of their phones processors has become an arms race which Apple continually purports to have won with each new model of iPhone being advertised and marketed as both faster than Apple's previous generations and faster than its competitors' offerings.

50.     At all times herein, PLAINTIFFS reasonably relied upon Defendants' advertisements, marketing and representations concerning the processing speed of its Older Model iPhones when purchasing an Older Model iPhone.

51.     However, as each successive generation of iPhone has been designed with increasingly fast, powerful processors, the power demanded by those has increased, not only as to the total capacity of the batteries required to power them, but as to the peak amount of power that the battery must be capable of producing during the processor's peak power draws.

52.     In part to combat the increasingly power-hungry nature of ever-faster processors, Defendant like most other smart-phone manufacturers has introduced multi-core technology into its processors.  Each of the above processors has two types of cores: low power cores and high power cores.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

53.     To preserve battery life, most of the time while performing low-intensity and day to day operations, the processor uses only its low power cores which are not as fast or powerful as the high power cores, but also use less energy.  Then, when the processor must engage in a graphically or computationally intensive application, such as recording and editing video, playing video games or running certain other intensive applications, the processor switches to its high power cores, which are much faster, but which also use much more power.

54.     The processors in Apple's Older Model iPhones correspondingly draw power from the battery at variable rates; less when the phone is not being used, or is using simple applications that require only the low-power cores to be switched on, and more when the phone is performing graphically or computationally intensive applications or functions which require the processor to activate its high power cores  ("peak power draws.")

55.     Despite efficiencies like this, Battery technology has not matched the pace at which processors have bounded forward.  Apple's own published statements regarding the A8 processor stated that it was between 50 and 70 times as fast as the processor powering the first iPhone in 2007.  However, the battery powering the iPhone 6S was only twice as powerful as the original iPhone's.

56.     As a general rule, the faster the speed of a processor (i.e. the more Megahertz or Gigahertz it has) the more voltage it will require when running at peak performance and creating peak power draws on its battery.  The lithium ion polymer batteries which power Defendant's Older Model iPhones have not become more powerful despite each generation of iPhone having successively more powerful processors.  This information is set forth below:

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

| OLDER MODEL IPHONE BATTERY SPECIFICATIONS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | iPhone 6 | iPhone 6 Plus | iPhone 6S | iPhone 6S Plus | iPhone SE | iPhone 7 | iPhone 7 Plus |
| Release Date | Sept. 19, 2014 | Sept. 19, 2014 | Sept. 25, 2015 | Sept. 25, 2015 | Mar. 31, 2016 | Sept. 26, 2016 | Sept. 26, 2016 |
| Peak Power Output | 3.82 V | 3.82 V | 3.82 V | 3.08 V | 3.82 V | 3.80 V | 3.82 V |
| Total Capacity | 6.91 W·h | 11.1 W·h | 6.55 W·h | 10.45 W·h | 6.21 W·h | 7.45 W·h | 11.10 W·h |
| Battery Type | Li-Po | Li-Po | Li-Po | Li-Po | Li-Ion | Li-Ion | Li-Ion |

Key: V=Volts; W·h=Watt hours;  Li-Po=Lithium-Ion Polymer; Li-Ion=Lithium Ion

57.     To make matters worse, batteries age based on how many times they are drained and recharged, i.e., "cycled."  With each cycle, the battery begins to accumulate dead cells within it, which translates to decreases battery capacity (i.e. fewer Watt hours) and is less capable of reaching peak voltage as resistance caused by the dead cells increases within the battery.

58.     This resulted in iPhone batteries that were  barely sufficient to meet the power requirements of Defendant's Older Model iPhone processors when new, and which became entirely insufficient once they had begun to age.

59.     The power demands of the iPhone processor remain constant throughout the lifetime of an iPhone, but the ability of the battery to meet those demands begins to diminish from the first time the battery is charged and depleted.  The day comes for every smart-phone when its processor will create a peak power draw and its battery will be unable to supply the power to match.  When that happens, in Defendant's case, the device would turn off at

16

unexpected times and would not power back on until plugged into a wall outlet.  Defendant did

not properly account for this reality when designing the Older Model iPhones, and as a result,

even a few months after being produced, those Older Model iPhones with the most charge cycles

on their batteries  did not have enough battery power to supply their processors with sufficient

peak voltage and as a result, began to suffer intermittent failures.

60.     Defendant's competitors routinely design smart-phones whose batteries meet all

their power requirements and do not need to be artificially slowed to remain functional, and are

capable of doing so for four, five, six or more years.  Defendant's iPhone battery/processor defect

is an anomaly in the fiercely competitive world of smart-phone manufacturing.

61.     The limitations of the iPhone batteries and Apple's failure to account for the aging

of its batteries and the demands of its new processors came to a head in late 2016 when users

began to complain of their Older Model iPhones shutting off at random intervals and refusing to

power back on until plugged into a wall outlet.

62.     On November 20, 2016 Defendant admitted that "...a very small number of iPhone

6s devices may unexpectedly shut down" but claimed this shut–down issue "only affects devices

within a limited serial number range that were manufactured between September and October

2015."  This statement was false and misleading.  At all times herein, the unexpected shutdown

issue was poised to effect all Older Model iPhones, but only those with the most charge cycles

had begun to exhibit symptoms.  As all Older Model iPhones aged, the hardware defect which

caused the shutdowns would become evident.

63.     Defendant had actual knowledge that this problem was going to grow as more

users accumulated more charge cycles on the batteries powering their Older Model iPhones and

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

that the defect effected several hundred million Older Model iPhones and that it was just a matter

of time before all those iPhones began to exhibit similar symptoms.

64.     Defendant, in addition to being an electronics manufacturer, is also a software

company, and looked for a way to mitigate the looming disaster through the software it created

and supplied to the Older Model iPhones.

65.     The operating system installed on all iPhones and the Older Model iPhones is

referred to as iOS by Defendant.

66.     The operating system is engineered, designed, and exclusively controlled and

monitored by Defendant.

67.     The operating system controls every facet of the Older Model iPhones, from its

user interface, to its functionality, to the performance of its hardware including its processor.

68.     Defendant releases periodic software updates and new versions of the iOS which

effect all Older Model iPhones and other devices manufactured by Defendant.

69.     Defendant publishes on its website and other places "release notes" which

describe the changes made by the Defendant to the iOS and what the intended effect of those

changes are.  Typically these updates relate to security features or implement new functionality or

user features to make the Older Model iPhones more functional.

70.     PLAINTIFFS and others rely upon the release notes that accompany each iOS

update to understand what changes are being made to their Apple products, why the changes are

being made and what the effect of those changes will be on their devices and their iPhone user-

experiences.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

71.     Defendant engineered, designed, and exclusively controlled iOS 10.2.1 and iOS 11.2.0 at all times and had exclusive control over the delivery of each update to PLAINTIFFS' Older Model iPhones.

72.     After having actual knowledge of the iPhone battery/processor defect which would eventually impact hundreds of millions of Older Model iPhones, Defendant implemented undisclosed commands buried within iOS 10.2.1 and later in iOS 11.2.0 which it hoped would mask the battery/processor defect and prevent PLAINTIFFS' Older Model iPhones from experiencing intermittent shutdowns.  Defendant did not disclose any of this to PLAINTIFFS or the Class ahead of the release of iOS 10.2.1 or iOS 11.2.0.

73.     Defendant released  iOS 10.2.1 and iOS 11.2.0 on January 23, 2017 and December 2, 2017 respectively for installation on all Older Model iPhones.

74.     Defendant published release notes for iOS 10.2.1 and iOS 11.2.0 contemporaneously with the releases, neither of which stated that there would be changes to the speed, performance, processor speed or capabilities of the Older Model iPhones and neither of which mentioned the underlying battery/processor defect which necessitated changes to the iOS and to the Older Model iPhones.

75.     Apple released iOS 11.2.0 which applied the same reduction of processor speeds to Older Model iPhones 7 and 7Plus, despite Apple claiming in November, 2016 these models were not subject to unexpected shutdowns.

76.     At no time prior to being found out did Defendant disclose that iOS 10.2.1 and 11.2.0 would reduce processor speeds and diminish performance in Older Model iPhones. PLAINTIFFS were not informed of and did not consent to or have knowledge of the changes

19

clandestinely introduced in iOS 10.2.1 and 11.2.0 when those updates were released to their Older Model iPhones.

77.    Apple iPhone users reported sluggish responses and seemingly slowed operating speeds in their Older Model iPhones, and eventually media reports surfaced in which independent investigation by Poole and TeckFire quantified the slowdowns and confirmed that Older Model iPhone processors had been underclocked and throttled down, causing the iPhones to operate more slowly following the release iOS 10.2.1 and 11.2.0.

78.    Any smart-phone user can visit Geekbench.com, or other websites which, if the user so desires can interact with the hardware in the user's smart-phone and perform a speed-test or "benchmark" of that hardware, including the processor, and can show the user exactly how well or quickly their processor is performing.  Geekbench.com hosts a library of hundreds of thousands of Older Model iPhone users who over the years had performed benchmarks on their Older Model iPhones, both before and after iOS 10.2.1, in order to see how well their processors were performing.  By analyzing this bank of data, Mr. Pooele was able to see a trend: benchmarks of the processor speeds of Older Model iPhones prior to iOS 10.2.1 were **significantly** higher than immediately after iOS 10.2.1 and continued to be lower thereafter and were much lower after iOS 10.2.1 than Defendant had originally advertised and continued to advertise after implementing iOS 10.2.1.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

1

79.    A brief overview of Mr. Pooele's findings is summarized in the graph below:

2

3

4

5

6

7

8

9

10



iPhone 6s - 10.2.0

11

12

13

14

15

16

17

18

19

20

21

22

23

80.    The above graph shows the frequency with which Older Model iPhone processors

24

were capable of operating at or near their published speeds when tested by users.  The "x" axis

25

represents the speed of the iPhone 6S processor when undergoing a speed test, and the "y" axis

26

27

represents how many iPhone 6S phones are operating at a given speed.  The graph reveals that

28

21

prior to iOS 10.2.1, almost every single iPhone 6S tested posted processor speeds at or somewhat better than the specifications published by Defendant.



81.     And this second graph shows that immediately after the implementation of iOS 10.2.1 roughly fifty percent of iPhone 6S users now had processors whose maximum processing speeds were only ninety, seventy, fifty and **forty percent** of the specifications published by Defendant.  While many newer iPhone 6S models with fewer charge cycles on their batteries were less effected and posted speeds close to those published by Defendant, the older the batteries became, the more iPhone 6S models were affected, and were affected more drastically by the reduction in processing speed.

82.     And the below graph shows that roughly 11 months later, when iOS 11.2.0 was released, even more iPhone 6S models were affected by the software slowdown, and were slowed even more drastically as their batteries had completed cycles since iOS 10.2.1 was released.

83.     What became evident to Mr. Pooele and what Defendant knew prior to and for nearly a year after implementing iOS 10.2.1 was that the Older Model iPhones were not performing anywhere near the specifications which Defendant had published, advertised, marketed and continued to advertise and market.  All the while Defendant continued to do so, knowing that its products were not performing as it advertised and in fact **could not** and never could perform as it advertised they would; the iPhones were much slower.



CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

84.     What is worth noting about the above data is that as more and more iPhone6S were used daily by the Class, and accrued more charge cycles on their batteries, eventually **every** user's performance would be slowed, and would be slowed an ever-increasing rate until all iPhone6S users were effected, and were throttled down to less than forty percent of their original speed.

85.     The loss of performance after iOS 10.2.1 was so severe that some users described their iPhone 6 models as being "..nearly unusable..."

86.     After intense media pressure, in December 2017 Defendant admitted in published statements that it released iOS version 10.2.1 in part to intentionally reduce the processing speeds of all the Older Model iPhones to ostensibly prevent erratic operation of the Older Model iPhones and the admitted eventual battery shutdowns.  Apple admitted the same as to iOS 11.2.0 and stated that it planned to continue to do so in future iOS releases as to newer model iPhones.

87.     Defendant admitted in published statements that Older Model iPhones were designed such that only when a battery was new, i.e. it has no dead cells and minimal resistance, was it capable of supplying enough peak power or peak voltage to adequately power the processor during peak power draws; essentially that only when an Older Model iPhone was brand new could it actually perform at the speeds Defendant advertised, but that even within a few months the Older Model iPhone would not be able to perform as quickly as advertised. Defendant did not disclose this in its advertising or marketing campaigns, and did not disclose this subsequently to PLAINTIFFS and at all times in fact concealed and misrepresented this fact.

88.     Defendant at all relevant times herein knew that aging batteries have increased resistance and would become incapable of providing sufficient voltage to supply Older Model iPhone processors at peak power draws.

89.     Defendant had actual knowledge at all relevant times herein of the iPhone processor/battery defect that would cause Older Model iPhones to shut down unexpectedly, rendering the portable devices useless until plugged into a wall outlet.

90.     Defendant knew that at all relevant times herein that without iOS10.2.1 decreasing processor speeds and reducing the amount of voltage required by the iPhone processor, every Older Model iPhone would being to suffer intermittent shutdowns as its battery completed more charge cycles.

91.     Defendant also knew that after the implementation of iOS 10.2.1 and iOS 11.2.0, the processor speeds Apple advertised, marketed and published for the Older Model iPhones were no longer obtainable for a significant number of Older Model iPhones, but did not disclose the same to PLAINTIFFS or the Class.

92.     Either way, with iOS 10.2.1 or without, Defendant's Older Model iPhones carried a material design defect that would not allow the Older Model iPhones to operate with the processor speeds Defendant advertised for more than a few months' time, and that for most of the time that an average consumer owned the Older Model iPhone it would either shut down when approaching the published processor speed, or would have to be throttled down by Defendant to operate at much lower speeds, seeing up to a 60% reduction in actual processor speed versus what was advertised by Apple.

93.     This resulted in PLAINTIFFS purchasing iPhones that were very fast when new, and only a few months later began to operate much more slowly than before, much more slowly than competitors offerings which operated as fast as advertised for the entire lifetime of the smart-phone, and in fact, PLAINTIFFS' Older Model iPhones performed so slowly that they were no faster than the preceding generation of iPhone that they replaced.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

94.     Defendant negligently designed the Older Model iPhones when it failed to account for the well-settled principle that a battery's peak output diminishes and its resistance increases with each charging cycle and how this would impact the iPhone battery's ability to supply power to the iPhone processor both when new and as the battery aged and cycled.  Other manufacturers accounted for this principle and continue to adequately account for it when designing competing smart-phone lines including Samsung's Galaxy line, LG's V30, Google's Pixel and others.

95.     These other smart phones do not intermittently shut off from peak power draws on aging batteries and neither do these phones require artificial decrease of processor speed to remain powered on, despite having processors as fast or even faster than Defendant's Older Model iPhones possess. Many of these competing phones use the same components, including the same or substantially similar processors and batteries as Defendant's Older iPhone Models use, and through non-defective design, have been able to account for aging batteries without decreasing processor speed or encountering the intermittent shutoff issues experienced by Apple users.

96.     Defendant was negligent and at all times knew of its negligence and undertook extensive, calculated and protracted schemes to conceal its negligent design, engineering and production of the Older Model iPhones.

97.     The iPhone processor/battery design defect was an inherent design defect endemic to all of Apple's Older Model iPhones, of which Apple had actual knowledge at all times relevant herein. Apple sought at all relevant times herein to conceal the existence of this design defect through calculated omissions, misrepresentations and actions and the implementation of iOS 10.2.1 and iOS 11.2.0.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

98.     Defendant Apple did not disclose the existence of this defect or its attempts to remedy it, to its customers and users of its products.  Defendant did not seek consent from and no consent was given by any of the PLAINTIFFS or Class Members at any time herein for Apple to slow their processors.

99.     Rather than admit the existence of the design defect in the Older Model iPhones, which led to intermittent shut downs under peak processing draws, Defendant instead clandestinely released a software "fix" to mask this defect in iOS 10.2.1 and again in iOS 11.2, hoping to solve the issue without informing its customers that the problem existed.  The release notes provided by Defendant for iOS 10.2.1 did not mention the underlying battery/processor defect, nor Defendant's intentional slowing of Older Model iPhones to mask the issue.

100.     iOS 10.2.1 and 11.2 were designed, in part, to slow down the CPUs of the Older Model iPhones.  Slowing down the processor would decrease the amount of power that the processor would draw from the battery during a peak power draw, thereby preventing instances where the processor outpaced the battery and caused the phone to shut down.

101.     Defendant did not disclose any of this, and did not disclose that iOS 10.2.1 and 11.2 would cause users' Older Model iPhones to begin to operate more slowly.  Apple did not disclose that the Older Model iPhones would only continue to slow down at an increasing rate as the iPhone batteries continued to age and accumulated more dead cells and resistance.

102.     The Older Model iPhones are completely sealed units with integral batteries. The iPhone battery cannot be removed or replaced without dismantling the Older Model iPhone. Replacing an iPhone battery anywhere except at an Apple retail store by an Apple employee is an express violation of Apple's warranties of the Older Model iPhones and cannot be done at all

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

without specialized tools and technical training.  Defendant charged over $80.00 dollars to replace an iPhone battery.

103.    Defendant knew or should have known that its iOS software upgrade to existing Older Model iPhones would cause them to operate more slowly and poorly and would greatly impair the Older Model iPhone user experience.

104.    Additionally, Defendant knew or should have known that its iOS 10.2.1 and 11.2.0 software upgrades to Older Model iPhones would result in hundreds of millions of owners of those existing Older Model iPhones purchasing a newer model iPhone in order to obtain a better functioning iPhone and that they would do so sooner and on a more frequent basis than if their Older Model iPhone was not slowed by Defendant's actions and inactions.

105.    Defendant knew or should have known that absent knowledge of the iPhone processor/battery design defect and absent knowledge of Defendant's intentional slowing of iPhone processor speeds, PLAINTIFFS would attribute their Older Model iPhone's sluggish operating speeds to obsolescence and would purchase a newer, faster iPhone model, rather than simply replacing the battery, which they would be likely to do had Apple not purposefully concealed the iPhone battery/processor-related design defect from them.

106.    Apple initially mislead the consuming public by failing to disclose that it knew and had always known about the iPhone processor/battery peak power draw defect, i.e. that it had actual knowledge of its design defect inherent in all Older Model iPhones.  Apple sought to conceal the existence of the design defect when Apple further failed to disclose and concealed that it had attempted to mask its symptoms with clandestine code inserted into  iOS 10.2.1 and 11.2 and further failed to disclose that a side-effect of that fix would cause consumers' phones to operate more slowly and poorly.

107.   To the contrary, Defendant Apple had always known of the design defect in the Older Model iPhones.  Additionally, Defendant knew or should have known that the software upgrades in iOS 10.2.1 and 11.2.0 would have deleterious effects on operation of the Older Model iPhones and would greatly impair the user-experience for PLAINTIFFS.  Apple knew or should have known that increasingly slow operation of PLAINTIFFS' Older Model iPhones would lead them to replace the Older Model iPhones with newer iPhone models and would cause them to expend sums to repair, replace or diagnose the slow operation of their Older Model iPhones, and that without knowledge of the defects effect on their phone, would prevent PLAINTIFFS from availing themselves of the one year warranty as to workmanship and material defects carried by all Defendant's products and of the AppleCare+ three year warranty that PLAINTIFFS had paid between $99.00 and $129.00 to purchase from Apple.

108.   In fact, well before Defendant released its various iOS software updates to the consuming public, Defendant knew that it would negatively affect the functionality of Older Model iPhones.

109.   Defendant has, subsequent to its December 2017 admissions, begun to offer battery replacement programs in order to redress the slow performance of the Older Model iPhones.  Defendant published the following statement on its website on December 28, 2017:

> To address our customers' concerns, to recognize their loyalty and to regain the trust of anyone who may have doubted Apple's intentions, we've decided to take the following steps: Apple is reducing the price of an out-of-warranty iPhone battery replacement by $50 — from $79 to $29 — for anyone with an iPhone 6 or later whose battery needs to be replaced, available worldwide through December 2018... At Apple, our customers' trust means everything to us. We will never stop working to earn and maintain it. We are able to do the work we love only because of your faith and support — and we will never forget that or take it for granted.

110.    This tardy *mea culpa* is simply another attempt to mislead PLAINTIFFS. Defendant has purposefully again chosen not to disclose that it negligently designed the Older Model iPhones in the first place and that replacing a battery will only treat the symptoms of that design defect.  A new iPhone battery will continue to age and better performance will only last a few short months before iPhone users again begin to experience the same diminished performance and problems that they are currently experiencing.  As one user put it: "Don't get too excited about it [the battery replacement], I had mine replaced in January and now it's already back at 1200 MHZ [from 2400Mhz]...11 months and almost unusable again."

111.    Far from working to "regain the trust" the trust of its customers, Defendant is specifically  taking advantage of their lack of knowledge about its products, their lack of understanding of the serious defect affecting hundreds of millions of Older Model iPhones and hoping to placate its loyal customers with a $30.00 battery instead the defect-free product that it always promised.

112.    PLAINTIFFS quite simply never received the product that Defendant promised. What PLAINTIFFS and the Class received was a defective iPhone that Defendant subsequently tampered with to hobble its performance in order to mask the underlying hardware issues that would have been more expensive and difficult for Defendant to actually address.  Along the way Defendant realized that diminishing performance of its products without disclosing the same, could and would spur sales of newer, more expensive iPhone models.  When the software Bandaid created more problems than it solved, and PLAINTIFFS and the Class began to notice, Defendant chose time and again to continue its misrepresentations, concealments, false advertising and to try once again to dupe hundreds of millions of unsuspecting customers who

1    had spent their hard-earned money on what Apple promised was the latest and greatest, but what

2    turned out to be a poorly performing, deeply flawed product.

3

4    **V.     CLASS ACTION ALLEGATIONS.**

5

6          113.    PLAINTIFFS bring this lawsuit on behalf of PLAINTIFFS and pursuant to

7    *Federal Rules of Civil Procedure* 23 (a), (b)(2), (b)(3), and (c)4, as a Class Action on behalf of

8    themselves and seek certification of a Class consisting of all others similarly situated, initially

9    defined as follows:

10

11          114.    All persons and entities across the world who have owned or currently own

12   Older Model iPhone and who have received any of the iOS 10 or iOS 11 series of software

13   updates;

14          115.    PLAINTIFFS seek certification of worldwide class pursuant to the above

15   described Class definition.

16

17          116.    Excluded from the above-described Class definition are Defendant, including any

18   parent, subsidiary, or affiliate of Defendant, any entity in which Defendant has a controlling

19   interest, as well as any employees, officers, directors, affiliates, legal representatives, heirs,

20   predecessors, successors, and assigns of Defendant.  Also excluded from the above described

21   Class definition are the judges and any magistrate judges and all persons related to any such judge

22   or magistrate judge as defined in 28 U.S.C. § 455(b), court personnel in this lawsuit including any

23   members of their immediate families.  PLAINTIFFS reserve the right to amend the above

24   described Class definition if discovery reveals the necessity for modification of the Class

25   definition.  Also excluded from the above described Class definition are PLAINTIFFS' Counsel

26   and anyone employed by PLAINTIFFS' Counsel as well as the immediate family members of

27

28

31

PLAINTIFFS' Counsel and the immediate family members of anyone employed by

PLAINTIFFS' Counsel.

117.   **Numerosity.**  *Federal Rule of Civil Procedure* 23(a)(1).  The Class is so numerous

and geographically dispersed throughout the world that joinder of all Class Members is

impracticable.  The exact number and identities of Class Members is unknown, but PLAINTIFFS

are informed and believe that the proposed Class Members total in the millions.  The exact

number and identities of Class Members are known to Defendant or can be determined and are

readily identifiable and ascertainable from Defendant through, including but not limited to,

Defendant's reported sales records and data, warranty records, other computerized information,

records and documents in Defendant's possession, custody and control or in the possession,

custody and control of agents of the Defendant.  Class Members can be notified as to the

pendency of this Class Action by mass advertisement, by United States postal mail, by worldwide

mail carriers in their respective countries and by electronic email or by other electronic or social

media avenues.

118.   **Commonality.**  *Federal Rule of Civil Procedure* 23(a)(2).  There are questions of

law and fact that are common to all Class Members which questions predominate over any

question affecting only an individual Class Member.  The Class Members were and continue to

be subjected to the same practices of the Defendant.  The common questions and principal

common issues raised by PLAINTIFFS' claims include:

A.   Whether Defendant purposefully and knowingly interfered with the use of

Older Model iPhones by intentionally hindering performance of Older Model iPhones through the

installation of certain software updates;

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

B.      Whether Defendant's software updates did in fact adversely affect the performance of Older Model iPhones;

C.      The extent to which Defendant's software updates affected Older Model iPhones performance;

D.      Whether Defendant's software updates did in fact degrade the performance Older Model iPhones;

E.      Whether Defendant should have notified PLAINTIFFS and Class Members of the underlying battery and peak power draw design defects which Apple knew of;

F.      Whether Defendant should have notified PLAINTIFFS and Class Members before it implemented software updates that adversely affected the speed and/or performance of Older Model iPhones;

G.      Whether Defendant's acts and omissions violated California's *Unfair Competition Law*, California *Business & Professions Code* §§ 17200, *et seq*.;

H.      Whether Defendant's acts and omissions violated California's *Consumer Legal Remedies Act*, California *Civil Code* §§ 1750, *et seq*.;

I.      Whether Defendant's acts and omissions violated California's *False and Misleading Advertising Law*, California *Business & Professions Code* §§ 17500, *et seq*.;

J.      Whether Defendant violated applicable consumer protection laws by intentionally slowing down or throttling Older Model iPhones;

K.      Whether Defendant violated applicable consumer protection laws by failing to disclose the flaw in their Processors to PLAINTIFFS and the Class Members;

L.      Whether Defendant's acts and omissions constitute negligence;

33

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

M.      Whether Defendant tortuously interfered with the use and enjoyment of Older Model iPhones;

N.      Whether Defendant utilized software updates to Older Model iPhones in order to induce PLAINTIFFS and the Class Members to purchase newer model iPhones;

O.       Whether Defendant has been unjustly enriched by intentionally and surreptitiously degrading the performance, quality and functionality of Older Model iPhones through its software updates;

P.      Whether PLAINTIFFS and the Class Member have been damaged as a result of  the  alleged acts and omissions of Defendant and if so what is the appropriate damage relief for Defendant's violations;

Q.      The nature and extent of any other remedies and relief to which PLAINTIFFS and the  Class Members are entitled to.

119.    Each of these common questions of law and fact is identical for PLAINTIFFS and each and every Class Member.

120.    **Typicality.** *Federal Rule of Civil Procedure* 23(a)(3).  PLAINTIFFS' claims are typical of the claims of all the other Class Members, because PLAINTIFFS' claims are based on the same legal and remedial theories as the claims of the Class and arise from the same course of conduct by Defendant.

121.    **Adequacy.** *Federal Rule of Civil Procedure* 23 (a)(4)  PLAINTIFFS will thoroughly, fairly and adequately protect the interest of all Class Members in the prosecution of this Class Action and in the administration of all matters relating to the claims stated herein. PLAINTIFFS are similarly situated with, and have suffered similar injuries as, the Class

PLAINTIFFS seek to represent.  PLAINTIFFS have retained competent Legal Counsel experienced in handling class action lawsuits and complex litigation and have the resources and financial capabilities to adequately and vigorously prosecute this Class Action.  Neither PLAINTIFFS nor PLAINTIFFS' Counsel have any interest which might cause them not to vigorously pursue this Class Action.  PLAINTIFFS will fairly and adequately protect the interests of the Class and have no interests that will conflict with interests of the Class.

122.  **Superiority and Manageability.**  *Federal Rule of Civil Procedure* 23(b)(3)  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of the members of the Class is impracticable.  Even if individual Class members were able to afford individual litigation, it would be unduly burdensome to the Courts in which the individual litigation would proceed and the cost to the court system would be substantial.  Additionally, individual litigation could result in contradictory and inconsistent judgments with multiple courts hearing identical individual lawsuits whereby each Plaintiff would have to prove an identical set of facts in order to recover, resulting in significant delay and expense to PLAINTIFFS and Defendant.  The prosecution of this lawsuit as a class action does not present any unique management difficulties and therefore proceeding as a class action presents fewer management difficulties, conserves judicial resources, conserves resources of the PLAINTIFFS and the Defendant and more fully protects the rights of each Class Member.  Prosecuting this lawsuit as a Class Action will not create any problems with manageability.

123.  Defendant has subjected the entire Class to the same violations of State and Federal law.  Accordingly, class certification is appropriate under Rule 23 because common issues of law and fact regarding Defendant's uniform violations predominate over individual

issues, and class certification is a superior method of resolving these claims.  No unusual

difficulties are likely to be encountered in the management of this matter as a Class Action.

Defendant has acted and continues to act in a manner that is generally applicable to the entire

Class thereby making final injunctive relief or corresponding declaratory relief appropriate with

respect to the Class as a whole.

124.    **Injunctive Relief.** *Federal Rule of Civil Procedure* 23(b)(2).  Defendant has

acted and continues to act on grounds generally applicable to the entire Class, thereby making

final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a

whole.

**VI.    FIRST CLAIM FOR RELIEF: Unlawful Business Practices Against Defendant**.
**(California *Business & Professions Code* § 17200, *et seq*.)**

125.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 124

of this Complaint, as though set forth in full herein.

126.    Within the previous four years Defendant has engaged in unfair business acts and

practices within the meaning of *Business and Professions Code* § 17200, *et seq*.  Specifically, the

unfair acts and practices, include *inter alia*: (a) intentionally concealing the design defects

inherent in Older Model iPhones; (b) unlawfully concealing that Defendant intentionally

interfered with the performance of the Older Model iPhones; (c) failing to disclose and

intentionally concealing the existence of the iPhone design defects; (d) failing to disclose and

intentionally concealing Defendant's interference with the operation of the Older Model iPhones;

(e) misrepresenting the reasons that Defendant did interfere with the operation of the Older

Model iPhones; and (f) engaging in other unlawful, unfair and fraudulent misconduct as alleged herein.

127. At all material times herein, Defendant engaged in various marketing and advertising schemes offering Older Model iPhones by way of, *inter alia*, commercial marketing, including but not limited to advertising and direct marketing, without disclosing the design defects inherent in the Older Model iPhones and concealing Defendant's continuous, ongoing interference with the operation of the Older Model iPhones. PLAINTIFFS are further informed and believe and thereon allege that such marketing was false and misleading because such marketing (a) did not state the design defects which effected the Older Model iPhones; (b) failed to disclose Defendant's ongoing and active interference with the operation of the Older Model iPhones; and (c) grossly overstating the speed, capability, longevity, functionality and operational ability of the Older Model iPhones. Defendant's actions misrepresented or omitted the true facts about the design defects effecting the Older Model iPhones and Defendant's interference with the same.

128. Defendant's advertisements and inducements were made within the State of California and come within the definition of advertising as contained in *Business and Professions Code* § 17500, *et seq*., in that such marketing materials were intended as inducements to purchase Older Model iPhones and such statements were disseminated by Defendant to PLAINTIFFS, and California consumers and were intended to reach the potential purchasers of the Older Model iPhones in the State of California. These marketing materials misrepresented or omitted the design defects inherent in Defendant's iPhone product and further misrepresented or omitted Defendant's interference with the same. Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive, and Defendant made

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

such misrepresentations with the intention of inducing PLAINTIFFS to directly and indirectly purchase Defendant's Older Model iPhones.  Concealing the design defects and Defendant's intentional interference with the operation of the Older Model iPhones rendered all of Defendants' advertising *per se* false, misleading and deceptive.

129.    In furtherance of said plan and scheme, Defendant prepared and distributed within the State of California *via* commercial marketing, statements that deceptively represented the performance capabilities, speed, longevity and specifications of the Older Model iPhones. PLAINTIFFS were among the intended targets of such representations and necessarily and reasonably relied on Defendants materials and statements concerning the operation, lack of defects, performance and abilities of the Older Model iPhones, and by doing so, paid Defendant an unlawful windfall that Defendant would not have received but for its misrepresentations.

130.    The acts of Defendant set forth herein, in disseminating said misleading and deceptive statements throughout the world, specifically to PLAINTIFFS, were and are likely to deceive reasonable persons, including PLAINTIFFS, by obfuscating the inherent design defects in its products and by exaggerating and overstating the speed, performance and specifications of the Older Model iPhones, and by misrepresenting the true value and price of the Older Model iPhones by claiming that they functioned better than they actually did, and by claiming that they were defect-free and by inducing PLAINTIFFS to purchase Defendant's Older Model iPhones in lieu of competitors' models which actually performed true to their specifications and were without design defects,  as a result of Defendants actions as alleged herein, all in violation of the "misleading prong" of California *Business and Professionals Code* §17500, *et seq*.

131.    As a result of the above violations of the "misleading prong" of the *Business and Professions Code* § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

PLAINTIFFS.  PLAINTIFFS, pursuant to *Business and Professions Code* § 17535, are entitled to an order enjoining such future conduct on the part of Defendant and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to PLAINTIFFS any excess money (*i.e.* the difference between the price paid directly to Defendant for Older Model iPhones and what those phones were truly worth given their design defects and reduced performance, as well as the money paid by PLAINTIFFS to purchase newer iPhones to replace their Older Model iPhones as a result of being induced to do so by Defendant's interference with the performance of PLAINTIFF's Older Model iPhones)  paid for the Older Model iPhones by obfuscating the iPhone design defects and Defendant's interference with the performance of the devices, as a result of the misleading and deceptive advertising of Defendant.

132.    During all relevant times herein, Defendant represented to PLAINTIFFS and the general public by means of advertisements and direct marketing that its products were free of material defects and that they performed pursuant to certain published specifications when they did not.

133.    Defendant's marketing of Older Model iPhones has been present and ongoing for several years predating the filing of this Complaint.  Defendant concealed the design defects and its interference with the Older Model iPhones' speeds and performance from PLAINTIFFS and the general public.

134.    Defendant did not disclose to PLAINTIFFS that the price that Defendant would charge for the Older Model iPhones concealed the material design defects and diminished performance of Older Model iPhones across the world..  Accordingly, as a result of Defendant's acts, practices, representations and concealment, PLAINTIFFS did not believe that they were

purchasing defective, low-performing Older Model iPhones from Defendant when they made

their purchases in the State of California, the Northern District of California and across the world.

135.    Defendant's business acts and practices as alleged herein were also unlawful, in

further violation of the UCL, because Defendant's business acts and practices constituted the

following: (a) violations of the CLRA; (b) violations of the FAL; (c) conversion; and (d) breach

of contract.

136.    California *Business and Professions Code* § 17200, *et seq*., provides that "unfair

competition shall mean and include any unlawful, unfair or fraudulent business practice."  The

statute treats violations of other laws, when committed pursuant to business activity, as

independently actionable unlawful practices.  Unlawful acts under Section 17200, *et seq*., include

any act that is unlawful that is conducted as part of business activity, and includes violations of

state laws and regulations.  Pursuant to Section 17200, *et seq*., Defendant has violated: (A) 15

U.S.C. §45(a), *et seq*., declaring that "Unfair methods of competition in or affecting commerce,

and unfair or deceptive acts or practices in or affecting commerce" are unlawful; (B)  California

*Business and Professions Code* § 17508 which provides that "(a) [i]t shall be unlawful for any

person doing business in California and advertising to consumers in California to make any false

or misleading advertising claim, including claims that (1) purport to be based on factual,

objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other

brands or products, or (3) purport to be based on any fact;" (C) California *Civil Code* § 1770(a),

*et seq*., which provides that  "Misrepresenting the source, sponsorship, approval, or certification

of goods or services" is an unfair method of competition and unfair or deceptive act or practice;

(D) California *Civil Code* § 1770(a), *et seq*., which provides that "Representing that goods or

services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have" is an unfair method of competition and unfair or deceptive act or practice."

137.    Section 17203 of the *Business and Professions Code* provides that "(a)ny person performing or proposing to perform an act of unfair competition within this state may be enjoined in any court of competent jurisdiction." Section 17203 also provides for restitution "to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Additionally, if the PLAINTIFFS prevail on their claims of unfair competition, PLAINTIFFS may seek and be awarded attorneys fees as a private Attorney General pursuant to *Code of Civil Procedure* § 1021.5.  Additionally, PLAINTIFFS may be entitled to a portion of any common fund that is created as a result of this instant action.

138.    Section 17206.1 of the *Business and Professions Code* provides additional penalties of up to $2,500.00 per violation, where the acts of unfair competition are perpetrated against one or more senior citizens or disabled persons.  Due to the nature of the marketing and sale of Older Model iPhones in the State of California, the United States and the world by Defendant, a significant portion of the persons damaged by Defendant's unfair competition were senior citizens, disabled persons, or both, because they each were marketed to in the same fashion as to any other person.

139.    Defendant's business acts and practices alleged herein were unfair and fraudulent within the meaning of California's *Unfair Competition Laws* because Defendant's conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to such conduct, and there were reasonably available alternatives to further Defendant' legitimate

business interests, other than the misrepresentations and interference with consumers products described herein.

140.    Defendant's unlawful, unfair and fraudulent business acts and practices in violation of California's *Unfair Competition Laws* were likely to deceive, and in fact, did deceive, members of the consuming public, including PLAINTIFFS and the Class.

141.    During all relevant times herein, Defendant engaged in unlawful business acts and practices within the meaning of *Business and Professions Code* § 17200, *et seq*.  Specifically, Defendant misrepresented to PLAINTIFFS and worldwide consumers the defect-free nature of their iPhone product and overstated performance by, *inter alia*,  (A) intentionally concealing the design defects inherent in Older Model iPhones; (B) unlawfully concealed that it intentionally interfered with the performance of the Older Model iPhones; (C) failing to disclose the existence of the design defects; (D) failing to disclose its interference with the operation of the Older Model iPhones; (E) misrepresenting the reasons that it did interfere with the operation of the Older Model iPhones; and, (F) engaging in other unlawful, unfair and fraudulent misconduct as alleged herein. Defendant's conduct violates California's *Unfair Competition Laws* and consumer protection statutes as alleged herein.

142.    The business acts and practices of Defendant as alleged herein are also unlawful under the *Consumer Legal Remedy Act*, California *Civil Code* §1750, *et seq*. ("CLRA"), which forbids unfair and deceptive advertising.  Similarly, the business practices of Defendant as alleged herein are also unlawful under the *Lanham Act*, 15 U.S.C. § 1051 *et seq*., which also forbids false, deceptive and misleading advertising.

143.    Among other things, such acts of Defendant as described herein, and each of them, constitute untrue advertising under California *Business and Professions Code* § 17500, *et seq*., by

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

*inter alia*, (A) intentionally concealing the design defects inherent in Older Model iPhones; (B) unlawfully concealed that it intentionally interfered with the performance of the Older Model iPhones; (C) failing to disclose the existence of the design defects; (D) failing to disclose its interference with the operation of the Older Model iPhones; (E) misrepresenting the reasons that it did interfere with the operation of the Older Model iPhones; and (F) engaging in other unlawful, unfair and fraudulent misconduct as alleged herein. The business acts and practices alleged herein are unlawful under *Business and Professions Code* § 17500 *et seq.*, by constituting a fraudulent, unfair, and unconscionable act and by virtue of violating Section 17500, *et seq.,* which forbids untrue and misleading advertising.

144.    During the all relevant times herein, Defendant has engaged in an ongoing series of misleading marketing and advertising campaigns promoting Older Model iPhones for sale to PLAINTIFFS by way of, *inter alia*, commercial marketing and advertising materials. These materials misrepresented the true value and performance capabilities of the Older Model iPhones by failing to make PLAINTIFFS aware of the series design defects inherent in the Older Model iPhones and by grossly overstating and falsifying the performance capabilities of the Older Model iPhones in light of Defendant's intentional slowing down of the iPhones. Said advertisements and inducements were made within the State of California and come within the definition of advertising as contained in *Business and Professions Code* §17500, *et seq.,* in that such promotional materials were intended as inducements to purchase Older Model iPhones and are statements disseminated by Defendant to PLAINTIFFS and were intended to reach PLAINTIFFS and persons within the State of California. Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue, false and misleading.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

145.    In furtherance of Defendant's plan to market, sell and distribute Older Model iPhones across the world, Defendant has prepared and distributed commercial marketing that deceptively conceals inherent design defects in the Older Model iPhones while grossly overstating and exaggerating the Older Model iPhones' performance capabilities. All California Consumers, including PLAINTIFFS, were among the intended targets of such advertising and representations and necessarily and reasonably relied on these materials concerning defect-free nature and performance capabilities of the Older Model iPhones manufactured and distributed by Defendant.

146.    The above acts of Defendant in disseminating said untrue advertising deceived PLAINTIFFS by obfuscating the defects inherent in the Older Model iPhones and by overstating the performance capabilities while omitting Defendant's intentional interference with the performance of the Older Model iPhones and thus were in violation of the "untrue prong" of California *Business and Professions Code* §17500.

147.    Defendant's advertisements and inducements were made in furtherance of Defendant's fraudulent concealment of the material design defects in its Older Model iPhones and were distributed in interstate commerce and within the State of California and across the United States and the world by means of both mail and wire and such advertisements and inducements come within the definition of advertising as contained in *Business and Professions Code* §17500, *et seq.,* in that such promotional materials were intended as inducements to purchase Defendant's Older Model iPhones and are statements disseminated by Defendant to PLAINTIFFS and were intended to reach PLAINTIFFS, within the State of California. Defendant knew, or in the exercise of reasonable care should have known, that these statements

were untrue, false, deceptive and misleading and Defendant made such misrepresentations with the intention of inducing the PLAINTIFFS to purchase Defendant's Older Model iPhones.

148.    Further, as set forth herein, Defendant was able to induce PLAINTIFFS to pay full price for its defective and low-performing products by not disclosing the defects or the low performance, and was further able to induce PLAINTIFFS to purchase ever-newer and more expensive iPhone models sooner than they otherwise would have or in lieu of repairing or simply purchasing new batteries for their artificially-slowed Older Model iPhones and thus  Defendant's charges for Defendant's Older Model iPhones are nothing more than an unlawful windfall to Defendant.

149.    Because the true, defective nature of Defendant's Older Model iPhones, as well as the diminished performance and Defendant's unlawful and clandestine role in diminishing that performance were not disclose to PLAINTIFFS, Defendant has, and continues to violate California law.

150.    Defendant's representations were untrue and concealed the true facts that PLAINTIFFS were purchasing defective Older Model iPhones that could not and did not perform as advertised, and were in fact made to underperform by Defendant itself. The true facts were that Defendant's misrepresentations and omissions as to the distribution and sale of Older Model iPhones in California, the United States and across the world resulted in PLAINTIFFS significantly overpaying for Defendant's Older Model iPhones and being deprived of the ability to make meaningful comparisons and meaningful purchasing decisions when assessing the performance of Defendant's Older Model iPhones against offerings by competitors.  Defendant, at all times relevant herein, had no reasonable grounds to believe that their misrepresentations

45

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

concerning the defect-free nature and performance of iPhones were true, and knew or should have known that the representations were false and misleading.

151.   Defendant made the misrepresentations herein alleged with the intention of inducing PLAINTIFFS, California consumers and the general public to rely on such misrepresentations and purchase Defendant' Older Model iPhones which would result in Defendant receiving substantially more revenue from the sale of the Older Model iPhones than if Defendant' Older Model iPhones were marketed in a truthful manner.  Defendant knew, or through the exercise of reasonable diligence should have known their representations and concealment about the defect-free nature and performance of its Older Model iPhones in the State of California was false and misleading.

152.   During all relevant times herein, and continuing to the present, PLAINTIFFS and California consumers saw, believed and reasonably and justifiably relied on Defendant's advertisements which caused PLAINTIFF to purchase Defendant's Older Model iPhones.  As a result of Defendant's representations, PLAINTIFFS were induced to purchase Defendant's Older Model iPhones more frequently and to pay a higher price for the Older Model iPhones than had they been aware of the defects and the true lower performance of the Older Model iPhones, which they were not made aware of by specific misrepresentations, concealment and omissions created and disseminated by Defendant which were calculated to induce PLAINTIFFS to purchase the Older Model iPhones;  thus, PLAINTIFFS were damaged in an amount to be proved at trial but in no event less than the jurisdictional minimum of this Honorable Court.

153.   As a result of the unlawful business acts and practices described herein, *Business and Professions Code* §17203 entitles PLAINTIFF to an order (A) enjoining Defendant from advertising Older Model iPhones and future iPhone lines without disclosing Defendant's

46

interference with the performance of the same, without disclosing the defects inherent in the product and without disclosing the true performance and specifications of the Older Model iPhones; (B) requiring Defendant to provide clear and conspicuous disclosures as to the performance and defects and their involvement in reducing the performance of the Older Model iPhones in current and future software updates and full disclosure of all anticipated effects and changes to future iPhone performance based on those software updates; (C) mandatory injunctive relief requiring disclosure of all research, information, and internal communications or documentation related to sales figures, performance, defects, marketing and anticipated effects of the slowdown of Older Model iPhones to spur sales of new iPhones and any discussions relating to iOS 10.2.1 and 11.2.0; (D) mandatory injunctive relief requiring funding of iPhone battery replacement, repair and exchange programs, and refund programs for customers who purchased Older Model iPhones; (E) cessation of advertising and marketing of any of Defendant's Apple iPhone product in any misleading, untrue or exaggerated manner; and, (F) such other orders and judgments which may be necessary to disgorge Defendant' ill-gotten gains and to restore to any person in interest any excess money paid for Older Model iPhones as a result of Defendant' acts, omissions, and misrepresentations and any other unlawful conduct of Defendant.

154.    The above-described unlawful business acts and practices of Defendant present a threat and reasonable likelihood of deception to PLAINTIFFS and California consumers and other members of the Class in that Defendant has systematically perpetrated and continues to perpetrate such acts or practices through interstate commerce and in the State of California by means of the false, unlawful, unfair, misleading and deceptive marketing, distribution and sale of Defendant's Older Model iPhones.  Defendant received illegal proceeds and has failed and

refused to provide full restitution and disgorgement of all ill-gotten monies either acquired or

retained by Defendant.  Defendant's unlawful acts and practices violate California law.

155.     Therefore PLAINTIFFS pray for relief as set forth below and are entitled to

injunctive relief and/or restitution in an amount to be proven at trial but in no event less than the

jurisdictional minimum of this Honorable Court.

156.     Additionally, PLAINTIFFS pray for relief as set forth herein and are entitled to

injunctive relief, restitution and damages in an amount to be proven at trial; along with attorneys

fees as provided by *Civil Code* § 1748.1(B).

157.     PLAINTIFF reserves the right to allege other violations of law by Defendant,

which constitute other unlawful or unfair business acts or practices in violation of California's

*Unfair Competition Laws*.

**VII.     SECOND CAUSE OF ACTION: Violation of the Consumers Legal Remedies Act.
(California *Civil Code* §1750 *et seq.*)**

158.     PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 157

of this Complaint, as though set forth in full herein.

159.     This Claim for Relief is brought pursuant to the California *Consumer Legal

Remedies Act*, California *Civil Code* § 1750, *et seq.* ("CLRA").  This Claim for Relief seeks both

monetary damages and injunctive relief.  Pursuant to CLRA § 1780(d), attached hereto and

incorporated herein by this reference as Exhibit "B" is the true and correct *Affidavit of Rafael

Bernardino, Jr.*, showing this instant action is commenced in the proper venue; this action has

been commenced in a county described as a proper place for trial.

160.     The California CLRA was enacted to alleviate social and economic problems

stemming from deceptive business practices.  As stated by the Court of Appeal, "the CLRA is a

legislative embodiment of a desire to protect California Consumers and furthers a strong public policy of this state." *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1077.  The Legislature intended for courts to construe the CLRA liberally to "protect Consumers against unfair and deceptive business practices and provide efficient and economical procedures to secure such protection."  California *Civil Code* § 1760.  Under California *Civil Code* § 1780, specifically, any  Consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain, actual damages, an order enjoining the methods, acts, or practices, restitution and punitive damages.  California *Civil Code* § 1780.  Further, pursuant to Section 1780, any Consumer who is a senior citizen or a disabled person may seek and be awarded, in addition to the other remedies, up to five thousand dollars ($5,000.00).  Due to the nature of Defendant' false and deceptive advertising in the State of California, a significant portion of the persons damaged by Defendant' violation of the CLRA were senior citizens, disabled persons, or both.

161.    The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  California *Civil Code* § 1760.

162.    The business acts and practices of Defendant as alleged herein are unlawful under the *Consumers Legal Remedy Act*, California *Civil Code* §1750, *et seq*., which forbids unfair and deceptive advertising.  Similarly, the business acts and practices of Defendant as alleged herein are also unlawful under the *Lanham Act*, 15 U.S.C.  §§ 1051, *et seq*. which also forbids false, deceptive and misleading advertising.

163.    In addition, Defendant's false, unlawful, unfair, misleading and deceptive acts and practices constitute an unlawful windfall by (A) intentionally concealing the design defects inherent in Older Model iPhones; (B) unlawfully concealed that it intentionally interfered with the performance of the Older Model iPhones; (C) failing to disclose the existence of the design defects; (D) failing to disclose its interference with the operation of the Older Model iPhones; (E) misrepresenting the reasons that it did interfere with the operation of the Older Model iPhones; and, (F) engaging in other unlawful, unfair and fraudulent misconduct as alleged herein.

164.    Violations of the CLRA by the Defendant arise from its deceitful and misleading representations and  omissions of facts rendering their marketing misleading.  Despite actual knowledge of the design defect, the diminished performance and its intentional interference with the performance of the Older Model iPhones, Defendant never-the-less spread its false and misleading statements about the Older Model iPhones in California and across America to PLAINTIFFS, while neglecting to inform PLAINTIFFS and the Class of the material defects and diminished performance of the Older Model iPhones.

165.    Thirty days prior to the filing of this Complaint, PLAINTIFFS, through their counsel, made written demand, by certified mail, return receipt requested, that Defendant (A) cease and desist from interfering with the performance of Old Model iPhones and other products through iOS 10.2.1 and iOS 11.2.0 ; (B) cease and desist failing to disclose the known design defects inherent in the Older Model iPhones; (C) cease and desist grossly overstating the performance and capabilities of the Older Model iPhones; (D) cease and desist concealing changes and modifications to its products introduced via software updates without providing complete and accurate information regarding the modifications that user can expect to see impacting their devices; (E) cease and desist failing to state the true value of Defendant's Older

50

Model iPhones and future iPhone products; and, (F) refund to PLAINTIFFS all amounts Defendant unlawfully charged.  As of the date of filing this instant action, Defendant has not complied with the demand set forth in such correspondence as set forth below; and, in response to such demand, have specifically rejected PLAINTIFFS' demand to cease and desist their false, unlawful, unfair, misleading and deceptive acts and practices as embodied in Defendant's false and misleading marketing, advertising, misrepresentations and omissions.

166.   Pursuant to California *Civil Code* § 1782, on February 5th, 2018, PLAINTIFFS' counsel sent a notice of this action and demand letter by certified mail to the following Defendant at the followings address:

APPLE, INC., c/o its Chief Executive Officer, Tim Cook, One Infinite Way, Cupertino, California 95014.  See, Exhibit "A" attached hereto.

167.   Pursuant to California *Civil Code* § 1782 if a full and adequate response to this demand letter has not been received within 30 days of Defendant's receipt of that demand letter, Plaintiff will amend this complaint as a matter of right to include actual and punitive damages.

168.   PLAINTIFFS, and other persons who purchased Defendant's Older Model iPhones suffered a substantial injury when, during the relevant time period herein, up to and including the present, PLAINTIFFS paid full price for and purchased newer model iPhones to replace their sluggish, flagging Older Model iPhones and would not otherwise have, but for Defendant's unfair and unlawful misrepresentations, omissions and false advertising, including but not limited to (A) intentionally concealing the design defects inherent in Older Model iPhones; (B) unlawfully concealing that it intentionally interfered with the performance of the Older Model iPhones; (C) failing to disclose the existence of the design defects; (D) failing to disclose its interference with the operation of the Older Model iPhones; (E) misrepresenting the

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

reasons that it did interfere with the operation of the Older Model iPhones; and, (F) engaging in other unlawful, unfair and fraudulent misconduct as alleged herein. Defendant's conduct violates California's *Unfair Competition Laws* and consumer protection statutes as alleged herein. Specifically, and due expressly to Defendant's concealment of the defects and exaggeration of the performance of its products, PLAINTIFFS paid and continue to pay an excessive and unfair price for Defendant's Older Model iPhones.

169.    Defendant's misrepresentations which included the unfair and deceptive marketing and labeling of Defendant's Older Model iPhones provides no benefit to PLAINTIFFS. Indeed, the harm to PLAINTIFFS is substantial. Approximately 100 million Older Model iPhones were sold in America during each year of the relevant time period herein for a total sales of roughly $50 billion dollars during the relevant time period herein. Approximately double that many Older Model iPhones were sold world-wide. As such, the economic damage to PLAINTIFFS as a result of Defendant's (A) intentionally concealing the design defects inherent in Older Model iPhones; (B) unlawfully concealed that it intentionally interfered with the performance of the Older Model iPhones; (C) failing to disclose the existence of the design defects; (D) failing to disclose its interference with the operation of the Older Model iPhones; (E) misrepresenting the reasons that it did interfere with the operation of the Older Model iPhones; and, (F) engaging in other unlawful, unfair and fraudulent misconduct as alleged herein, resulted in Defendant obtaining tens of billions of dollars from PLAINTIFFS as a result of Defendant's unfair acts, omissions and practices during the Relevant Time Period herein.

170.    PLAINTIFFS could not have reasonably avoided the injuries suffered. Moreover, because of Defendant's sophisticated efforts to conceal the defects in its iPhone products and to conceal its interference with the performance of PLAINTIFFS' Older Model iPhones, the actual

usefulness, performance and value of Defendant's Older Model iPhones were concealed from PLAINTIFFS and Defendant was able to induce PLAINTIFFS to purchase not only the Older Model iPhones, but subsequent newer model iPhones to replace them as the Older Model iPhones' performance was artificially throttled back by Defendant. This concealment prevented PLAINTIFFS from discovering Defendant's false, unlawful, unfair, misleading and deceptive acts and practices.

171.    The gravity of the consequences of Defendant's conduct as described herein outweighs any justification, motive or reason therefore, and is immoral, unethical, deceptive, unfair, unscrupulous, offends established public policy, and is substantially injurious to PLAINTIFFS and the Class.

172.    The above described violations of California's consumer protection laws continue to this day.  Defendant received and continue to receive illegal proceeds and failed and continue to fail to provide full restitution and disgorgement of all ill-gotten monies either acquired or retained by Defendant.

173.    As a result of the unfair business acts and practices described above, California *Civil Code* §§ 1750a(2) entitles PLAINTIFFS to an order  (A) enjoining Defendant from advertising Older Model iPhones and future iPhone models without disclosing Defendant's interference with the performance of the same, without disclosing the defects inherent in the Older Model iPhones and without disclosing the true performance and specifications of the Older Model iPhones; (B) requiring Defendant to provide clear and conspicuous disclosures as to the performance and defects and their involvement in reducing the performance of the Older Model iPhones in current and future software updates and full disclosure of all anticipated effects and changes to future iPhone models' performance based on those software updates; (C) mandatory

53

injunctive relief requiring disclosure of all research, information, and internal communications or documentation related to sales figures, performance, defects, marketing and anticipated effects of the slowdown of Older Model iPhones to spur sales of new iPhones and any discussions relating to iOS 10.2.1 and 11.2.0; (D) mandatory injunctive relief requiring funding of battery replacement, repair and exchange programs, and refund programs for customers who purchased Older Model iPhones; (E) cessation of advertising and marketing of any of Defendant's Apple product in any misleading, untrue or exaggerated manner; and, (F) such other orders and judgments which may be necessary to disgorge Defendant' ill-gotten gains and to restore to any person in interest any excess money paid for Older Model iPhones as a result of Defendant's acts, omissions, and misrepresentations and any other unlawful conduct of Defendant. California *Civil Code* §§ 1750a(4) further entitles PLAINTIFFS to punitive damages against Defendant for their use or employment by any person or of a method, act, or practice in violation of  California *Civil Code* §§ 1770.

174.    Additionally, Defendant advertised that the Older Model iPhones were defect-free, and that they had far greater performance and capability than they actually had and Defendant specifically omitted its role in limiting that performance resulting in PLAINTIFFS paying a higher price for the Older Model iPhones and purchasing newer model iPhones to replace the Older Model iPhones when Defendant knew, or should have known, that its representations and advertisements regarding the defect-free nature and performance capabilities of the Older Model iPhones was false and misleading because Defendant, *inter alia*, (A) advertised without disclosing the true, diminished performance of the Older Model iPhones and the defects inherent in them; and  (B) failed to provide clear and conspicuous disclosures on the nature of the defects and the extent of Defendant's interference with the performance of the Older Model iPhones.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

175.   Defendant's false and misleading advertisement regarding the defective nature and performance of the Older Model iPhones was likely to deceive, and in fact, did deceive, reasonable members of the public, including PLAINTIFFS, who reasonably believed Defendant's representations about the Older Model iPhones.

176.   PLAINTIFFS provided Defendant with notice pursuant to California *Civil Code* §1782 and demanded that Defendant rectify the actions described herein.  See Exhibit "A" which is referred to and incorporated herein by this reference.   PLAINTIFFS sent this notice by certified mail, return receipt requested, to each Defendant' principal place of business within California pursuant to CLRA § 1782(a)(2).  Pursuant to PLAINTIFFS' Demand Letters, Defendant had thirty days from the date of the filing of this Complaint to rectify or agree to rectify their violations of the CLRA.

177.   Defendant's actions, representations, and conduct, as described herein, and each of them, have violated and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to California consumers, including but not limited to PLAINTIFFS.  Specifically, Defendant's  (A) intentionally concealing the design defects inherent in Older Model iPhones; (B) unlawfully concealing that it intentionally interfered with the performance of the Older Model iPhones; (C) failing to disclose the existence of the design defects; (D) failing to disclose its interference with the operation of the Older Model iPhones; (E) misrepresenting the reasons that it did interfere with the operation of the Older Model iPhones; and, (F) engaging in other unlawful, unfair and fraudulent misconduct as alleged herein.

178.   The Older Model iPhones that PLAINTIFFS  purchased from Defendant were "goods" within the meaning of California *Civil Code* §1761(a).

179.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California *Civil Code* § 1770( a) (5) in transactions that were intended to result in, and did result in, the sale of goods to consumers, including PLAINTIFFS which were initiated by Defendant's representations as to the defect-free nature and quality of Defendant's Older Model iPhones as well as exaggerated performance specifications and untrue specifications given the intentional throttling of the device's capabilities by Defendant.

180.    By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendant has violated, and continue to violate, Section 1770(a)(7) of the CLRA. Specifically, in violation of California *Civil Code* §1770(a)(7), Defendant's acts and practices constitute deceptive methods of competition, in that Defendant misrepresented the particular standard, quality, or grade of Defendant's products by claiming that they were defect-free when they were not, and by claiming that Defendant's iPhone performance and capabilities were much greater than they actually were.

181.    By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendant has violated, and continues to violate, Section 1770(a)(9) of the CLRA.  Specifically, in violation of California *Civil Code* §1770(a)(9) Defendant's acts and practices constitute deceptive methods of competition, in that the goods sold, are not sold as advertised.  Specifically, Defendant  (A) intentionally concealed the design defects inherent in Older Model iPhones; (B) unlawfully concealed that it intentionally interfered with the performance of the Older Model iPhones; (C) failed to disclose the existence of the design defects; (D) failed to disclose its interference with the operation of the Older Model iPhones; (E) misrepresented the reasons that it did interfere with the operation of the Older Model iPhones; and, (F) otherwise failed to disclose that the goods it sold were far from what was

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

advertised–carrying several design-defects and operating at performance specifications far lower than were advertising by Defendant.  Defendant advertised and claimed that its Older Model iPhones were useful and in fact better than offerings and competing models by other manufacturers which was objectively untrue, especially as to published claims relating to the speeds of its processors.

182.    By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendant has violated, and continue to violate, Section 1770(a)(16) of the CLRA.  Specifically, in violation of California *Civil Code* §1770(a)(16), Defendant's acts and practices constitute deceptive methods of competition, in that they represent that a subject of a transaction (i.e., Defendant' Older Model iPhones) that have been supplied in accordance with a previous representation when they have not.  Defendant is in violation of this code section by continuing to represent that its products have been supplied in a defect-free state when they were not in fact free of design defects and that they performed pursuant to certain specifications when they in fact performed at a much lower performance level than Defendant represented.

183.    By engaging in the actions, omission, misrepresentations, concealment and misconduct set forth in this Complaint, Defendant has violated, and continues to violate, California *Business and Professions Code* § 17508 which provides that "[i]t shall be unlawful for any person doing business in California and advertising to consumers in California to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) purport to be based on any fact."

184.    Specifically, Defendant's acts and practices constitute deceptive methods of competition, in that Defendant is:  (A) intentionally concealing the design defects inherent in

Older Model iPhones (B) unlawfully concealing that it intentionally interfered with the performance of the Older Model iPhones (C) failing to disclose the existence of the design defects; (D) failing to disclose its interference with the operation of the Older Model iPhones; (E) misrepresenting the reasons that it did interfere with the operation of the Older Model iPhones; and, (F) engaging in other unlawful, unfair and fraudulent misconduct as alleged herein.

185.    Pursuant to California *Civil Code* § 1780(a)(2) for the many violations of Section 1770 above and pursuant California *Business and Professions Code* § 17535 for violations under 17508 thereunder, PLAINTIFFS seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of Defendant's ill-gotten gains.

186.    PLAINTIFFS respectfully request that this Honorable Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California *Civil Code* §1780(a)(2).  If Defendant is not restrained from engaging in these types of practices in the future, PLAINTIFFS and the Class will continue to suffer harm.  The injunction requested to prevent Defendant's further unlawful acts in violation of the CLRA is for an order: (A) enjoining Defendant from advertising Older Model iPhones and future iPhone lines without disclosing Defendant's interference with the performance of the same, without disclosing the defects inherent in the product and without disclosing the true performance and specifications of the Older Model iPhones; (B) requiring Defendant to provide clear and conspicuous disclosures as to the performance and defects and their involvement in reducing the performance of the Older Model iPhones in current and future software updates and full disclosure of all anticipated effects and changes to future iPhone performance based on those software updates; (C) mandatory injunctive relief requiring disclosure of all research, information, and internal communications or documentation related to sales figures, performance, defects, marketing and anticipated effects of

the slowdown of Older Model iPhones to spur sales of new iPhones and any discussions relating to iOS 10.2.1 and 11.2.0; (D) mandatory injunctive relief requiring funding of battery replacement, repair and exchange programs, and refund programs for customers who purchased Older Model iPhones; (E) cessation of advertising and marketing of any of Defendant's Apple product in any misleading, untrue or exaggerated manner; and, (F) such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any excess money paid for Older Model iPhones as a result of Defendant's acts, omissions, and misrepresentations and any other unlawful conduct of Defendant in violation of the CLRA.

187.    PLAINTIFFS further respectfully request that this Honorable Court order Defendant to provide full restitution to PLAINTIFFS pursuant to California *Civil Code* §1780(a)(3) in an amount to be proven at trial and damages in an amount to be proven at trial pursuant to California *Civil Code* § 1770, *et seq*.  PLAINTIFFS further respectfully request that this Honorable Court order Defendant to pay penalties to senior citizens and disabled persons pursuant to California *Civil Code* § 1780, *et seq*.; and to pay attorneys fees on the basis of Common Fund Doctrine, Catalyst Theory or as otherwise provided by law or in equity.

188.    PLAINTIFFS further respectfully request that this Honorable Court order Defendant to pay punitive damages to PLAINTIFFS pursuant to California *Civil Code* §1780(a)(4).  On information and belief, PLAINTIFFS alleges that Defendant's actions were intentional, fraudulent, oppressive and malicious, and were committed with the specific intent of causing PLAINTIFFS injury and damage and/or were in conscious disregard of PLAINTIFFS' rights.  Accordingly, PLAINTIFFS are entitled to recover exemplary and punitive damages in an amount to be proved according to prove at trial.

189.    The actions of Defendant were (1) fraudulent, meaning an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendant with the intention on the part of the Defendant of thereby depriving a person of property or legal rights or otherwise causing injury; (2) malicious, meaning conduct which is intended by the Defendant to cause injury to PLAINTIFFS or despicable conduct which is carried on by the Defendant with a willful and conscious disregard of the rights or safety of others; (3) and/or oppressive, meaning despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; and done with the intention of depriving PLAINTIFFS of substantial rights. PLAINTIFFS are therefore entitled to punitive damages in a sufficient amount to make an example of, punish Defendant, and deter future fraudulent, oppressive and malicious misconduct in an amount according to be proven at trial.

190.    On information and belief, PLAINTIFFS allege that the corporate Defendant' officers, directors and/or managing agents authorized and ratified the actions of the corporate Defendant, Apple Inc., in making the unlawful falsehoods and misleading statements that were perpetuated by Defendant regarding the defects and under-performance of the Older Model iPhones during the Relevant Time Period and continuing to this day.  This marketing decision was necessarily carried out by Defendant Apple's high ranking officers, directors and/or managing agents given that such illegal marketing practices committed Defendant to a course of conduct that violates California laws to the significant pecuniary detriment of PLAINTIFFS, and significant pecuniary gain to Defendant.

191.    Therefore, PLAINTIFFS ask for relief as set forth below and are entitled to an award of injunctive relief, restitutionary relief, civil penalties, interest and attorneys fees in an

amount to be proven at trial, but in no event less than the jurisdictional minimum of this

Honorable Court in addition to any other relief this Honorable Court sees fit to award.

192.     PLAINTIFFS further seeks costs and attorney's fees pursuant to California *Civil Code* § 1780(e) and California *Civil Code* §1021.5.

## VIII.   THIRD CAUSE OF ACTION: Violation of California's False and Misleading Advertising Law.  (California *Business & Professions Code* § 17500, *et seq*.)

193.     PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 192 of this Complaint, as though set forth in full herein.

194.     California's *False Advertising Laws* ("FAL") make it unlawful for (a) "any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real ... property ... or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, ... in any ... advertising device, or ... in any other manner or means whatever, ... any statement, concerning that real ... property ... , or concerning any circumstance or matter of fact connected with the proposed ... disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading," or for (b) "any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that ... property ... professional or otherwise, so advertised at the price stated therein, or as so advertised."

195.     Defendant in this case violated California's FALs when it sought to sell its Older Model iPhones and induced PLAINTIFFS to purchase and pay for the same in reliance upon false and misleading statements made by the Defendant about the defect-free state of the Older Model

iPhones and the exaggerated and untrue performance specifications advertised by Defendant.  By representing that its iPhone products were free from defects and had performance specifications far from how they actually performed, Defendant induced PLAINTIFFS to purchase its Older Model iPhones on the basis that they were free from defect and would perform at speeds and pursuant to specifications which Defendant had advertised, without which, PLAINTIFFS would not have purchased Defendant's Older Model iPhones, and would not have purchased newer model iPhones to replace them; and, instead would have purchased competitor models that actually performed true to their specifications.  Defendant knew at all times that these representations were untrue and in fact knew that their iPhone products did carry material design defects; and, that their products did not, and could not, in large part due to Defendant's own interference with the operation of the Older Model iPhones, perform true to specifications, and that these representations would, and in fact did, induce consumers to purchase Defendant's iPhone products and then to more quickly upgrade to newer iPhone models due to the increasingly slower speeds with which their Older Model iPhones began to operate.

196.    Defendant also knew and failed to disclose, that it was purposefully slowing the processing speeds of Older Model iPhones and that without knowledge of the fact that their phones were being slowed artificially, PLAINTIFFS would reasonably attribute their iPhone's increasing sluggishness to obsolescence and simple age, and could not attribut the poor performance to clandestine, concealed, unpublished software updates created by Defendant to diminish the Older iPhone's performance.  The only alternative available to PLAINTIFFS, who were unaware of Defendant's actions, in order to obtain a faster phone, would be to upgrade to the next generation of Defendant's iPhones, which was precisely what Defendant wanted all

along as in the first quarter of 2017 69% of Defendant Apple's revenues were derived from the sale of the newest models of iPhones to the Class.

197.    Through the conduct alleged herein, Defendant further violated the FAL by:  (A) advertising without disclosing the existence of the battery/processor defect which plagued its phones and (B) by advertising that the Older Model iPhones would perform pursuant to certain specifications and by specifically omitting in those advertisements that Defendant was artificially throttling that performance.

198.    Moreover, Defendant made such false advertisements as part of a plan or scheme with the intent to: (A) induce PLAINTIFFS to purchase its products and to pay full price for those defective products; (B) to induce PLAINTIFFS to favorably compare  Defendant's products over its competitors products by exaggerating the performance of its products in light of its artificial reduction of the devices capabilities and speed; (C) to induce PLAINTIFFS to purchase the newest versions of its iPhones sooner and more often and to drive sales of those products; and, (D) to prevent PLAINTIFFS from determining that the Older Model iPhones were defective and to prevent them from seeking recompense, restitution, repairs or otherwise attempting to rectify or to have Defendant rectify the defect.

199.    Defendant's false and misleading advertisements regarding the defect-free status of its products and the exaggeration of the performance capabilities were deceptive, and in fact, did deceive, members of the public, including PLAINTIFFS, who reasonably and correctly believed that the Older Model iPhones would function as advertised and were free from defects and, thus, were induced to purchase Defendant' Older Model iPhones through Defendant's false and misleading representations.

200.    Pursuant to well-settled California Law, the following are deemed to be deceptive acts: (A) Making any express or implied statement in connection with the marketing or advertisement of any product that is false, or has the capacity, tendency or effect of deceiving or misleading consumers; or (B) Omitting any material information such that the express or implied statement deceives or tends to deceive consumers; (C)  Making, in connection with the marketing or advertising of a product any statements or representations concerning a product that materially contradict or conflict with any other statements or representations the Defendant made about such Product and renders such statements or representations misleading and/or deceptive; (D) Making, or causing to be made, any written or oral claim that is false, misleading or deceptive; (E) Representing that any product has any sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, or qualities that it does not have.

201.    As alleged herein, each Defendant, at all times relevant to this Complaint, violated the FAL by making deceptive representations about the Older Model iPhones. The Defendant also omitted or concealed material facts and failed to correct prior misrepresentations and omissions about the Older Model iPhones.  Defendant's omissions rendered even its seemingly truthful statements about the Older Model iPhones misleading and deceptive.

202.    Defendant made and/or disseminated deceptive statements, including, but not limited to, the following: (A) intentionally concealing the design defects inherent in Older Model iPhones; (B) unlawfully concealing that it intentionally interfered with the performance of the Older Model iPhones; (C) failing to disclose the existence of the design defects; (D) failing to disclose its interference with the operation of the Older Model iPhones; (E) misrepresenting the reasons that it did interfere with the operation of the Older Model iPhones; and, (F) engaging in other unlawful, unfair and fraudulent misconduct as alleged herein

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

203.    Defendant's false and deceptive representations and concealments were reasonably calculated to deceive PLAINTIFFS, and were made with the intent to deceive PLAINTIFFS, and did in fact deceive PLAINTIFFS.

204.    As described more specifically above, Defendant's representations and concealment constitute a course of conduct which continues to this day.

205.    But for Defendant's false and deceptive representations and concealment of material fact, PLAINTIFFS would not have purchased Defendant's Older Model iPhones and would not have purchased Defendant's newer model iPhones to replace them.

206.    Pursuant to California *Business & Professions Code* § 17203, PLAINTIFFS seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant.

## IX.    FOURTH CAUSE OF ACTION: Fraudulent Concealment/Common Law Fraud.

207.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 206 of this Complaint, as though set forth in full herein.

208.    Defendant at all times relevant herein suppressed and concealed the existence of the Defendant's iPhone battery/processor design defect and further suppressed and concealed Defendant's clandestine efforts to repair the design defect in Defendant's iPhone product through the implementation of software updates imbedded within iOS 10.2.1 and iOS 11.2.0.  At no point, including presently, has Defendant specifically addressed and disclosed what underlying defect caused it to implement the software slowdowns present in iOS 10.2.1 and iOS 11.2.0.

1    Defendant continues to deny, conceal and suppress the existence of the battery/processor design

2    defect.

3           209.    Moreover, Defendant undertook careful efforts to conceal and suppress the design,

4    implementation and monitoring of the software slowdown which Defendant's attempted to mask

5    the iPhone battery/processor design defect.  Defendant, which publishes release notes describing

6    the purpose, changes and modifications to each round of updates to the iOS  operating system,

7    did on multiple occasions specifically omit any mention of the software slowdown from the iOS

8    10.2.1 and iOS 11.2.0 release notes.  In fact, Defendant undertook great pains not to publish

9    anything relating to the iPhone battery/processor design defect or the software slowdown.

10          210.    In a November 30, 2016 published statement on its website in which Defendant

11   acknowledged the existence of unexpected shutdowns of its phones, it omitted from that

12   published statement any mention that the real cause of the shutdowns was the iPhone

13   processor/battery defect and also omitted any mention of Defendant's plans to address the issue

14   with the software slowdown.  Additionally, in its December 20, 2017 statement acknowledging

15   the existence of the software slowdown, Defendant again specifically concealed the existence of

16   the iPhone battery/processor defect that necessitated the slowdown in the first place.  Defendant

17   has engaged in a protracted, calculated scheme of omissions and representations to fraudulently

18   conceal the existence of the iPhone processor/battery defect and Defendant's software slowdown.

19          211.    At all relevant times herein, Defendant had actual knowledge of both the iPhone

20   processor/battery defect and knowledge of the iPhone software slowdown.  Defendant designed,

21   engineered and implemented the software slow down and admitted the same in a written,

22   published statement on December 20, 2017.   Defendant also admitted to the existence of a defect

23   with the hardware of the iPhones themselves when it stated: "A chemically aged battery also

24

25

26

27

28

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

becomes less capable of delivering peak energy loads, especially in a low state of charge, which may result in a device unexpectedly shutting itself down in some situations." It is evident then that Defendant knew at all times of the existence of battery/processor defects in its Older Model iPhones.

212.    This calculated concealment of the iPhone processor/battery defect and the iPhone software slowdown made the existence of these issues so difficult to detect that hundreds of millions of users were unable to ascertain that their iPhones carried a material design defect or that Defendant had surreptitiously placed the software slowdown into routine operating system updates for nearly a year.  The change defendant's software update effected in the performance of the Older Model iPhones was relative, difficult to quantify and hard to prove and could easily be chalked up to one's own skewed perception before it could be proven that Defendant was meddling with the Older Model iPhones.  Defendant's surreptitious software updates effected every iPhone in the world, leaving no unaffected iPhones for users to make comparisons with.  It was only random experimentation, and subsequent analysis by highly technical, sophisticated iPhone users who worked as software engineers running a software development laboratory who possessed diagnostic software and tools to analyze hundreds of thousands of instances of data from a base of iPhone users, that Defendant's ruse ever came to light and but for chance, might very well never have been discovered.

213.    Defendant at all times sought to suppress the existence of the iPhone processor/battery defect and the implementation of Defendant's software slowdown so that PLAINTIFFS would be unaware of the defects endemic to Defendant's Older Model iPhones and so that PLAINTIFFS would continue to buy not only those products manufactured and sold by the Defendant, but so that Defendant's goodwill and trust among PLAINTIFFS would be

preserved, as well as its brand-image and so that PLAINTIFFS would purchase newer generations of iPhones sooner and more frequently.

214.    It was not unreasonable for PLAINTIFFS to rely upon the statements and omissions of the manufacturer of the Older Model iPhones, and thanks in large part to Defendant's efforts to conceal, mislead and to obfuscate the iPhone processor/battery defects, PLAINTIFFS had no evidence to suggest that anything they could prove or quantify was wrong with their iPhones as Defendant rushed to implement Defendant's software fix and to eliminate any traces that it had been placed in the iPhone's owned by PLAINTIFFS and the Class. PLAINTIFFS were left with slow running Older Model iPhones relative to their speeds prior to iOS 10.2.1, but which performance changes were difficult to prove and to quantify.

215.    PLAINTIFFS suffered damages as a direct and proximate cause of Defendant's fraudulent concealment including: loss of productivity; loss of performance, speed, and capability; diminution and depreciation of the value of the Older Model iPhones; being overcharged for defective Older Model iPhones; being denied the opportunity to meaningfully consider alternative purchases; loss of moneys spent to diagnose and repair the Older Model iPhone's sluggish performance; the cost of replacing Older Model iPhones with newer model iPhone's or competitors offerings in order to realize good performance; the cost of the Older Model iPhones themselves; the cost of paying for new batteries and their installation by Defendant.  These damages were directly and proximately caused by Defendant's fraudulent misrepresentations and omissions and but for its fraudulent concealment of the defects of its iPhone product, PLAINTIFFS would not have purchased Defendant's iPhone product, and would have been reimbursed for the cost to repair or replace Defendant's iPhone if they had.

216.    Based on the foregoing, PLAINTIFFS seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant.

## X.    FIFTH CAUSE OF ACTION: Breach of Contract.

217.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 216 of this Complaint, as though set forth in full herein.

218.    PLAINTIFFS and Defendant contracted for PLAINTIFF to pay a purchase price and for Defendant to furnish PLAINTIFF with a defect-free Older Model iPhone that performed pursuant to written specifications furnished by Defendant.

219.    At all times herein, Defendant through various means of advertisements in interstate commerce, marketed, published and televised and distributed through online media and at retail stores, and by and through and in affiliation with certain cellular phone plan providers and cellular companies owning and operating retail stores did offer to sell PLAINTIFFS and the Class an Older Model iPhone in exchange for a given purchase price.

220.    PLAINTIFFS and the Class accepted Defendant's offer to purchase an Older Model iPhone by purchasing an Older Model iPhone and tendering the purchase price. PLAINTIFFS are informed and believe and thereon allege that certain Members of the Class purchased their IPhones from Defendant in installment, or on credit and as such, paid more than the retail purchase price for Defendant's iPhone product.

221.    PLAINTIFFS and Defendant each mutually assented to the terms and conditions of the iPhone purchase contract, the most material of which was that the Older Model iPhones be

defect-free and function and perform pursuant to the written specifications advertised and promised at all times by Defendant.

222.    PLAINTIFFS received consideration in the form of the Older Model iPhones and Defendant received consideration in the form of the purchase price paid for each Older Model iPhone.

223.    PLAINTIFFS and the Class, at all times had legal and actual capacity and competency to contract with Defendant, which had the same and at all times the obligations of the contract were mutual and the contract itself was written.

224.    PLAINTIFFS did pay the full purchase price for each Older Model iPhone, whereupon Defendant delivered the Older Model iPhone to PLAINTIFFS and at no time did PLAINTIFFS breach any of their duties or obligations pursuant to the contract.  PLAINTIFFS and the Class performed all contractual obligations required of them by Defendant, except for those acts that were excused or waived by Defendant.

225.    Defendant materially breached its contract with PLAINTIFFS and each Member of the Class in each instance where it delivered Older Model iPhones to PLAINTIFFS and the Class that did not function pursuant to Defendant's written specifications and where those Older Model iPhones were not defect-free, but actually contained material design defects hindering their ability to perform as Defendant promised, thereby depriving PLAINTIFFS and each Member of the Class of the benefit of their bargain.

226.    PLAINTIFFS suffered damages including: loss of productivity; loss of performance, speed, and capability; diminution and depreciation of the value of the Older Model iPhones; being overcharged for defective Older Model iPhones; being denied the opportunity to meaningfully consider alternative purchases; loss of moneys spent to diagnose and repair the

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

Older Model iPhone's sluggish performance; the cost of replacing Older Model iPhones with newer model iPhone's or competitors offerings in order to realize good performance; the cost of the Older Model iPhones themselves; the cost of paying for new batteries and their installation by Defendant.  These damages were directly and proximately caused by Defendant's breach of contract.

227.    Based on the foregoing, PLAINTIFFS seeks an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant and an order for rescission of its contract with Defendant and an award any other costs, fees, damages, or orders that this Honorable Court may deem just and proper.

## XI.    SIXTH CAUSE OF ACTION: Breach of Implied Contract.

228.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 227 of this Complaint, as though set forth in full herein.

229.    In the alternative, if no written contract between PLAINTIFFS and Defendant existed, PLAINTIFFS and Defendant at all relevant times herein did intentionally maintain such a relationship and intentionally conducted themselves as though there was a contract in which each sought to bargain for a benefit and where such conduct lead PLAINTIFFS to pay a purchase price to Defendant, and for Defendant to promise to furnish PLAINTIFFS with a defect-free Older Model iPhone that performed pursuant to written specifications furnished by Defendant.

230.    Through their conduct and relationship, and through oral promises and statements made by each, PLAINTIFFS and Defendant contracted for PLAINTIFFS to pay a purchase price

and for Defendant to furnish PLAINTIFFS with a defect-free Older Model iPhone that performed pursuant to written specifications furnished by Defendant.

231.    Where Defendant at all times through various interstate advertisements, marketing, published and televised and online media and at retail stores and by and through and in affiliation with certain cellular phone plan providers and cellular companies owning and operating retail store did offer PLAINTIFFS an Older Model iPhone in exchange for a given purchase price.

232.    PLAINTIFFS each did accept Defendant's offer to purchase an Older Model iPhone by the conduct of purchasing an Older Model iPhone from Defendant or from Defendant's agent.

233.    PLAINTIFFS and Defendant each mutually assented to the terms and conditions of the oral, unwritten contract, the most material of which was that the Older Model iPhones be defect-free, which at all times prior to the formation of the contract and by its conduct and by oral promises, Defendant at all times promised that the Older Model iPhones would and function and perform pursuant to the written specifications advertised at all times by Defendant.

234.    PLAINTIFFS received consideration in the form of the Older Model iPhones and Defendant received consideration in the form of the purchase price paid for each Older Model iPhone.  Defendant received this payment either directly or through Defendant's agent.

235.    PLAINTIFFS at all times had legal and actual capacity and competency to contract with Defendant and at all times the obligations of the contract were mutual.

236.    PLAINTIFFS did pay the full purchase price for each Older Model iPhone, whereupon Defendant delivered the Older Model iPhone to PLAINTIFFS and at no time did PLAINTIFFS breach any of their duties or obligations pursuant to the contract, conduct which at

all times reflected the existence of the contract.  PLAINTIFFS performed all acts required of them to be performed pursuant to such oral contract, except for those acts which were waived or excused by Defendant.

237.    Defendant materially breached its contract with PLAINTIFFS in each instance where it delivered Older Model iPhones to PLAINTIFFS that did not function pursuant to Defendant's written specifications and where those Older Model iPhones were not defect-free, but actually contain material design defects hindering their ability to perform as Defendant promised, thereby depriving PLAINTIFFS of the benefit of their bargain.

238.    PLAINTIFFS suffered damages including: loss of productivity; loss of performance, speed, and capability; diminution and depreciation of the value of the Older Model iPhones; being overcharged for defective Older Model iPhones; being denied the opportunity to meaningfully consider alternative purchases; loss of moneys spent to diagnose and repair the Older Model iPhone's sluggish performance; the cost of replacing Older Model iPhones with newer model iPhone's or competitors offerings in order to realize good performance; the cost of the Older Model iPhones themselves; the cost of paying for new batteries and their installation by Defendant. These damages were directly and proximately caused by Defendant's breach of contract.

239.    Based on the foregoing, PLAINTIFFS seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant and an order for rescission of its oral contract with Defendant and return of all consideration PLAINTIFFS and the Class provided Defendant pursuant to this oral contract.

1

2

**XII.    SEVENTH CAUSE OF ACTION: Breach of Implied Covenant of Good Faith and Fair Dealing, as to Contracts Written and Implied.**

3

4

240.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 239 of this Complaint, as though set forth in full herein.

5

6

7

241.    PLAINTIFFS and Defendant entered into a written, and in the alternative, an unwritten contract, for the sale of the Older Model iPhones to PLAINTIFFS.  Implicit in all contracts written and unwritten exists the Implied Covenant of Good Faith and Fair Dealing.

8

9

10

11

242.    In furtherance of the contract between PLAINTIFFS and Defendant and fully meeting their obligations thereunder, PLAINTIFFS did in each instance tender the full purchase price for the Older Model iPhones to Defendant.

12

13

14

15

243.    The most material term of the contract, whether written or implied, was that the Older Model iPhones be defect-free and that they function pursuant to the performance specifications that Defendant had at all times promised they would.

16

17

18

19

20

21

22

244.    Through Defendant's breach of the Implied Covenant of Good faith and Fair Dealing, PLAINTIFFS did not learn of the material design defects effecting the Older Model iPhones for months or years after the design defect manifested itself.  Additionally, through Defendant's intentional interference with the performance of the Older Model iPhones (i.e. the software slowdown implemented in iOS 10.2.1 and 11.2.0) PLAINTIFFS did not receive Older Model iPhones that could perform pursuant to the specifications which Defendant had advertised.

23

24

25

26

27

245.    Defendant at all times intentionally and by not disclosing any of the above, did unfairly interfere with PLAINTIFFS' right to receive an Older Model iPhone that was defect-free and which performed pursuant to the specifications which Defendant had promised.  Therefore, Defendant did breach the Implied Covenant of Good Faith and Fair Dealing.

28

246.     As a direct and proximate result of Defendant's breach of the Implied Covenant of Good Faith and Fair Dealing PLAINTIFFS suffered damages including: loss of productivity; loss of performance, speed, and capability; diminution and depreciation of the value of the Older Model iPhones; being overcharged for defective Older Model iPhones; being denied the opportunity to meaningfully consider alternative purchases; loss of moneys spent to diagnose and repair the Older Model iPhone's sluggish performance; the cost of replacing Older Model iPhones with newer model iPhone's or competitors offerings in order to realize good performance; the cost of the Older Model iPhones themselves; the cost of paying for new batteries and their installation by Defendant. These damages were directly and proximately caused by Defendant's acts and omissions and but for its concealment of the defects of its iPhone product, PLAINTIFFS would not have purchased Defendant's iPhone products, and would have been reimbursed for the cost to repair or replace them if they had.

247.     Based on the foregoing, PLAINTIFF seeks an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant and an order for rescission of its written and/or oral contracts with Defendant.

248.     PLAINTIFFS further respectfully request that this Honorable Court order Defendant to pay punitive damages to PLAINTIFFS pursuant to California *Civil Code* §3294(a). On information and belief, PLAINTIFFS alleges that Defendant's actions were intentional, fraudulent, oppressive and malicious, and were committed with the specific intent of causing PLAINTIFFS injury and damage and/or were in conscious disregard of PLAINTIFFS' rights. Accordingly, PLAINTIFFS are entitled to recover exemplary and punitive damages in an amount to be proved according to prove at trial.

249.    The actions of Defendant were (1) fraudulent, meaning an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendant with the intention on the part of the Defendant of thereby depriving a person of property or legal rights or otherwise causing injury; (2) malicious, meaning conduct which is intended by the Defendant to cause injury to PLAINTIFFS or despicable conduct which is carried on by the Defendant with a willful and conscious disregard of the rights or safety of others; (3) and/or oppressive, meaning despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; and done with the intention of depriving PLAINTIFFS of substantial rights. PLAINTIFFS are therefore entitled to punitive damages in a sufficient amount to make an example of, punish Defendant, and deter future fraudulent, oppressive and malicious misconduct in an amount according to be proven at trial.

250.    On information and belief, PLAINTIFFS allege that the corporate Defendant' officers, directors and/or managing agents authorized and ratified the actions of the corporate Defendant, Apple Inc., in making the unlawful falsehoods and misleading statements that were perpetuated by Defendant regarding the defects and under-performance of the Older Model iPhones during the Relevant Time Period and continuing to this day.  This marketing decision was necessarily carried out by Defendant Apple's high ranking officers, directors and/or managing agents given that such illegal marketing practices committed Defendant to a course of conduct that violates California laws to the significant pecuniary detriment of PLAINTIFFS, and significant pecuniary gain to Defendant.

251.    Therefore, PLAINTIFFS ask for relief as set forth below and are entitled to injunctive relief, restitution, damages, civil penalties, punitive damages and attorneys fees in an

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

amount to be proven at trial, but in no event less than the jurisdictional minimum of this Honorable Court.

## XIII.  EIGHTH CAUSE OF ACTION: Breach of Express Warranties

252.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 251 of this Complaint, as though set forth in full herein.

253.    DEFENDANT warranted at all times in interstate print media, advertisements and marketing that the Older Model iPhones were free from design and workmanship defects, and that they could record, edit and send video, stream television from the internet, play videogames, perform computing intensive applications and could perform all the functions of a modern day smart phone and that they would do all of the above with at least the speed allowed for by the A9, A10 Fusion and A11 processors, which speeds were published and were referenced in all interstate advertising, print, and marketing materials for Defendant's Older Model iPhones.

254.    Defendant provides a written one year warranty for all its iPhone products, which states in pertinent part:

> "Apple Inc. of One Infinite Loop, Cupertino, California, U.S.A. 95014 ("Apple") warrants the Apple-branded iPhone, iPad, iPod or Apple TV hardware product and the Apple-branded accessories contained in the original packaging ("Apple Product") against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser ("Warranty Period.") Apple's published guidelines include but are not limited to information contained in technical specifications, user manuals and service communications."

255.    Defendant also offers its "AppleCare+" Warranty for Defendant's iPhones which extends the base one year warranty for another two years' time, and for the iPhone 6 model line cost $129.00 and for the iPhone 7 (and subsequent models) costs $99.00.  A number of Class

Members and PLAINTIFFS reasonably estimated on available information and belief be at least 55% of the Class, purchased AppleCare+ for their respective Older Model iPhones, at a cost of either $120.00 or $99.00 depending on which specific Older Model iPhone they purchased.

256.    Despite making and publishing each of these express warranties, Defendant knew at all relevant times herein that the express warranties that it made, upon which PLAINTIFFS relied when purchasing the Older Model iPhones, were false.  In fact there were serious design-flaws endemic to the Older Model iPhones which rendered them incapable of routinely performing the aforementioned commonplace, usual functions upon which smart-phones are expected to be able to do by their users.  Defendant made these express warranties knowing and with the expectation that PLAINTIFFS would rely upon them and that they would induce PLAINTIFFS to purchase Defendant's Older Model iPhones.

257.    Defendant breached the warranties when it made them because it sold PLAINTIFFS defective Older Model iPhones whose defects prevented them from being able to operate as quickly as Defendant promised, prevent them from being able to perform many of the commonplace tasks and applications that PLAINTIFFS had originally purchased them for and because Defendant intentionally interfered with the operation of the Older Model iPhones and slowed them to the point that they could not perform pursuant to the specifications that PLAINTIFFS had originally purchased them in reliance upon such warranties.

258.    Further, PLAINTIFFS were unable to make use of Defendant's One Year Warranty or their AppleCare+ warranties, where they purchased them, because Defendant fraudulently concealed the existence of the iPhone battery/processor defect from PLAINTIFFS, and sought to cover up symptoms of the iPhone defect by implementing the software slowdown in iOS 10.2.1 and iOS 11.2.  Without knowledge of the defect, PLAINTIFFS could not avail

themselves of the express warranties provided by Defendant to repair the defect during, before or after the expiration of the warranty period.

259.    PLAINTIFFS purchased the Older Model iPhones in reliance upon these express warranties and were harmed when the Older Model iPhones did not and could not perform as warranted.  PLAINTIFFS  were harmed in the amount they overpaid for defective iPhone products that could not and did not perform as advertised, both due to their design defects and due to Apple's intentional interference with the operation of the Older Model iPhones. PLAINTIFFS were further harmed when they were forced to purchase newer version of the iPhone in order to obtain an iPhone that performed as expected.  PLAINTIFFS were lastly harmed by Apple's refusal to acknowledge the defect and to pay for the cost to exchange the Older Model iPhones for iPhones which did not have the defects, or to otherwise pay for repairs to cure the defects. PLAINTIFFS were further harmed by a diminution in the value of the Older Model iPhones as a result of their lack of performance and design defects.

260.    But for Defendant's express warranties, PLAINTIFFS would not have purchased Defendant's Older Model iPhones and would not have purchased newer model iPhones to replace them.

261.    As a direct and proximate result of Defendant's breach of its express warranties and because of the concealment of the defects and issues underlying the poor performance of Defendant's iPhone products, the concealment of which left PLAINTIFFS unable to avail themselves of the Apple iPhone warranties, PLAINTIFFS suffered damages including: loss of productivity; loss of performance, speed, and capability; diminution and depreciation of the value of the Older Model iPhones; being overcharged for defective Older Model iPhones; being denied the opportunity to meaningfully consider alternative purchases; loss of moneys spent to diagnose

and repair the Older Model iPhone's sluggish performance; the cost of replacing Older Model iPhones with newer model iPhone's or competitors offerings in order to realize good performance; the cost of the Older Model iPhones themselves; the cost of paying for new batteries and their installation by Defendant. These damages were directly and proximately caused by Defendant's fraudulent misrepresentations and omissions and but for its fraudulent concealment of the defects of its product, PLAINTIFFS would not have purchased its products and would not have purchased the additional warranties, and would have been reimbursed for the cost to repair or replace Defendant's iPhones if they had.

262.    Based on these repeated violations of the express warranties which Defendant used to induce PLAINTIFFS to purchase the Older Model iPhones, PLAINTIFFS seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant as well as any sums spent to purchase a newer model iPhone to replace it.  Additionally, Plaintiff seeks disgorgement of all sums paid by Plaintiff Class to purchase AppleCare+ warranties.


**XIV.    NINTH CAUSE OF ACTION: Breach of Implied Warranty of Merchantability (California *Commercial Code* § 2314)**

263.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 262 of this Complaint, as though set forth in full herein.

264.    The Older Model iPhones sold by Defendant to PLAINTIFFS and Class Members were not of an average, acceptable quality and were not fit for the ordinary purposes for which they were to be used. Smart-phones which shutdown intermittently and which cannot be restarted without being plugged into a wall outlet are not useful to average smart-phone consumers and

furthermore smart-phones whose speed and usability are purposefully diminished by the manufacturer in an attempt to conceal underlying hardware defects issues relating to the battery and CPU are not as useful as a reasonable consumer could expect, and a smart-phone which runs increasingly more slowly as its battery ages due to Defendant's implementation of the software slowdown is likewise not as useful as a proper functioning smart-phone would be.

265.   Consumers equate Defendant's iPhone products  with speed and streamlined operation, and rely upon them to be useful and operate with speeds true to their published specifics and in a reliable fashion. The Older Model iPhones were not of average, acceptable quality because at the very least, other phone manufacturers routinely produce phones which do not intermittently shut down, and whose processors do not require reduction of their processing speeds in order to continue to function at all.  Defendant's breached the Implied Warranty of Merchantability when it sold the Older Model iPhones that did not perform in an ordinary fashion compared to other smart-phones and which were not of average or acceptable quality.

266.   As a direct and proximate result of Defendant's breach of the Implied Warranty of Merchantability and because of the fraudulent concealment of the defects and issues underlying the poor performance of its products, PLAINTIFFS suffered damages including: loss of productivity; loss of performance, speed, and capability; diminution and depreciation of the value of the Older Model iPhones; being overcharged for defective Older Model iPhones; being denied the opportunity to meaningfully consider alternative purchases; loss of moneys spent to diagnose and repair the Older Model iPhone's sluggish performance; the cost of replacing Older Model iPhones with newer model iPhone's or competitors offerings in order to realize good performance; the cost of the Older Model iPhones themselves; the cost of paying for new batteries and their installation by Defendant. These damages were directly and proximately

caused by Defendant's failure to provide smart-phones which performed in an ordinary fashion and which were of acceptable quality. PLAINTIFFS would not have purchased Defendant's iPhone products had they known of unacceptable quality of the Older Model iPhones and their inability to operate in an ordinary fashion, and would have been reimbursed for the cost to repair or replace them if they had.

267.    Based on these repeated violations of the Implied Warranty of Merchantability by Defendant, PLAINTIFFS seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant as well as any sums spent to purchase a newer model iPhone to replace them, in addition to any other consequential, actual, restitutionary or compensatory damages, or other attorneys' fees, costs, or orders as this Honorable Court deems just and proper.

**XV.    TENTH CAUSE OF ACTION: Breach of Implied Warranty of Fitness for a Particular Purpose. (California *Commercial Code* § 2315)**

268.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 267 of this Complaint, as though set forth in full herein.

269.    The Older Model iPhones sold by Defendant to PLAINTIFFS and Class Members were not fit for the particular purpose for which they were sold to PLAINTIFFS and Class Members. PLAINTIFFS and Class Members relied upon Defendant's interstate advertising, representations, and salespersons, all of which recommended the Older iPhone Models as being cutting-edge, fast, reliable and long-lasting.  Defendant and its employees are experts compared to PLAINTIFFS in the subject matter of smart-phones and electronic devices and their advice and recommendations could have been and indeed were reasonably relied upon by PLAINTIFFS and

the Class and were intended by Defendant and its employees to be relied upon by PLAINTIFFS and the Class.

270.    Smart-phones which shutdown intermittently and which cannot be restarted without being plugged into a wall outlet are not reliable and furthermore smart-phones whose speed and usability are purposefully diminished by the manufacturer in an attempt to conceal underlying hardware defect issues relating to the battery and processor are not cutting-edge, fast, reliable or particularly long-lasting.  Consumers equate Apple products with speed, reliability and streamlined operation.  Defendant and its employees at all times represents that Apple iPhones are speedy, reliable and provide streamlined smart-phone operations; and as such, that the iPhones were therefore fit for PLAINTIFFS particular purposes and PLAINTIFFS and Class Members relied at all times upon these representations.

271.    The Older Model iPhones were not fit for the particular purposes that Defendant represented, because they carried implicit design defects which caused them to shutoff at random intervals, because the battery could not provide enough power to the processor, causing shutdowns to occur at increasing intervals which necessitated plugging the Older Model iPhones into a wall to obtain enough peak voltage to restart the processor.  Further, because Apple's solution to the issue was to artificially decrease the speed of the Older iPhone Models, causing them to be even less fit for the speed of operation and graphically and computationally intense applications which Defendant and its employees represented they were useful for.

272.    Defendant breached the Implied Warranty of Fitness for a Particular Purpose when it sold the Older iPhone Models that did not perform for the particular purposes that Defendant represented they would.

273.     As a direct and proximate result of Defendant's breach of its express warranties and because of the fraudulent concealment of the defects and issues underlying the poor performance of Defendant's iPhone products, the concealment of which left PLAINTIFFS unable and unaware to take steps to cure or remedy the defects and the lack of fitness of the Older Model iPhones for the particular purposes for which PLAINTIFFS had purchased them, PLAINTIFFS suffered damages including: loss of productivity; loss of performance, speed, and capability; diminution and depreciation of the value of the Older Model iPhones; being overcharged for defective Older Model iPhones; being denied the opportunity to meaningfully consider alternative purchases; loss of moneys spent to diagnose and repair the Older Model iPhone's sluggish performance; the cost of replacing Older Model iPhones with newer model iPhone's or competitors offerings in order to realize good performance; the cost of the Older Model iPhones themselves; the cost of paying for new batteries and their installation by Defendant. These damages were directly and proximately caused because the Older Model iPhones were not fit and not suitable for the particular purposes for which PLAINTIFFS purchased them.

274.     Based on these repeated violations of the express warranties which Defendant used to induce PLAINTIFFS to purchase the Older Model iPhones, PLAINTIFFS seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant as well as any sums spent to purchase a newer model iPhone to replace it.  PLAINTIFFS also seek any other attorneys' fees, costs, awards, actual, restitutionary, compensatory or consequential damages or orders as this Honorable Court deems just and proper.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

**XVI.    ELEVENTH CAUSE OF ACTION: Breach of Express Warranty Pursuant to the**
**_Magnuson-Moss Warranty Act._ (15 U.S.C. § 2301 _et seq._)**

275.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 274

of this Complaint, as though set forth in full herein.

276.    Defendant warranted at all times in interstate print media, advertisements and

marketing that the Older Model iPhones were free from design and workmanship defects, and

that they could record, edit and send video, stream television from the internet, play videogames,

perform computing intensive applications and could perform all the functions of a modern day

smart phone; and that they would do all of the above with at least the speed allowed for by the

A9, A10 Fusion and A11 processors, which speeds were published and were referenced in all

Defendant's interstate advertising, print, and marketing materials for the Older Model iPhones.

277.    Defendant provides a written one year warranty for all its products, which reads:

> "Apple Inc. of One Infinite Loop, Cupertino, California, U.S.A. 95014 ("Apple")
> warrants the Apple-branded iPhone, iPad, iPod or Apple TV hardware product and
> the Apple-branded accessories contained in the original packaging ("Apple
> Product") against defects in materials and workmanship when used normally in
> accordance with Apple's published guidelines for a period of ONE (1) YEAR from
> the date of original retail purchase by the end-user purchaser ("Warranty Period.")
> Apple's published guidelines include but are not limited to information contained
> in technical specifications, user manuals and service communications."

Defendant also offers its AppleCare+ Warranty for iPhones which extends the base one year

warranty for another two years' time, and for the iPhone 6 model line cost $129.00 and for the

iPhone 7 (and subsequent models) costs $99.00.  PLAINTIFFS are informed and believe that not

less than 55% of the Class, purchase AppleCare+ for their respective Older Model iPhones, at a

cost of either $120.00 or $99.00 depending on which specific Older Model iPhone was

purchased.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

278.    Despite making and publishing each of these express warranties, Defendant knew at all relevant times herein that the express warranties that it made, and upon which PLAINTIFFS relied when purchasing the Older Model iPhones, were false.  The true facts were that there were serious design-flaws endemic to the Older Model iPhones which rendered them incapable of routinely performing the aforementioned commonplace, usual functions upon which smart-phones are expected to be able to perform for their users.  Defendant made these express warranties knowing and with the expectation that PLAINTIFFS would rely upon them and that they would induce PLAINTIFFS to purchase Defendant's Older Model iPhones.

279.    Defendant breached the warranties when it made them because it sold PLAINTIFFS defective Older Model iPhones whose defects prevented them from being able to operate as quickly as Defendant promises, prevent them from being able to perform many of the commonplace tasks and applications that PLAINTIFFS had originally purchased them for and because Defendant intentionally interfered with the operation of the Older Model iPhones and slowed them to the point that they could not perform pursuant to the specifications that PLAINTIFFS had originally purchased them in reliance upon.

280.    Further, PLAINTIFFS were unable to make use of Defendant's One Year Warranty or their AppleCare+ warranties, because Defendant fraudulently concealed the existence of the iPhone battery/processor defect from PLAINTIFFS and the Class,  and sought to cover up symptoms of the iPhone defects by implementing the software slowdown in iOS 10.2.1 and iOS 11.2.  Without knowledge of the iPhone defect, PLAINTIFFS could not avail themselves of the express warranties provided by Defendant to repair the defect.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

281.    Plaintiff's purchased the Older Model iPhones in reliance upon Defendant's express warranties and were harmed when the Older Model iPhones did not and could not perform as warrantied by Defendant.  PLAINTIFFS  were harmed in the amount they overpaid for defective products that could not and did not perform as advertised, both due to their design defects and due to Apple's intentional interference with the operation of the of the Older Model iPhones.  PLAINTIFFS were further harmed when they were forced to purchase newer version of the iPhone in order to obtain a smart-phone that performed as expected.  PLAINTIFFS  were lastly harmed by Apple's refusal to acknowledge the defect and to pay for the cost to exchange the Older Model iPhones for iPhones which did not have the defects, or to otherwise pay for repairs to cure the defects. PLAINTIFFS were further harmed by a diminution in the value of the Older Model iPhones as a result of their lack of performance and design defects.

282.    But for Defendant's false and deceptive express warranties, PLAINTIFFS would not have purchased Defendant's Older Model iPhones and would not have purchased Defendant's newer model iPhones to replace them.   Based on these repeated violations of the express warranties which Defendant used to induce PLAINTIFFS to purchase the Older Model iPhones, PLAINTIFFS seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant as well as any sums spent to purchase a newer model iPhone to replace the defective iPhones.  Additionally, Plaintiff seeks disgorgement of all sums paid by Plaintiff Class to purchase AppleCare+ warranties.  Additionally, pursuant to 15 U.S. Code § 2310(d), *et seq.*, PLAINTIFFS seek an award of any and all attorneys' fees expended pursuant to this action. PLAINTIFFS also seek any other attorneys' fees, costs, awards, actual, restitutionary,

87

1    compensatory or consequential damages or orders as this Honorable Court may deem just and

2    proper.

3

4

     **XVII.  TWELFTH CAUSE OF ACTION: Negligence.**

5

6            283.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 282

7    of this Complaint, as though set forth in full herein.

8            284.    Defendant, like all manufacturers, must design its products with reasonable care.

9    Apple owes this duty of reasonable care to PLAINTIFFS and to all Class Members whom it could

10   reasonable foresee as purchasing and using its iPhone products. This duty of reasonable care

11   requires Defendant to design its iPhone products with at least as much care as competing

12   manufacturers in the smart-phone production industry producing and designing competing

13   products of average quality would reasonably employ in designing and manufacturing their own

14

15   products.

16           285.    Defendant did not design its Older iPhone Models with reasonable care, because it

17   did not account for increasing resistance in its iPhone batteries and the inability of the iPhone

18   batteries to supply the iPhone Processors with enough power during peak power draws as the

19   batteries aged.  Other manufacturers of smart-phones such as Samsung, LG, Google, and others

20   have designed smart-phones whose processors continue to function without unexpected

21   shutdowns or the need to reduce processor processing speeds through undisclosed software

22   updates.  Defendant's negligent design of the Older iPhone Models, as well as its attempts to

23   surreptitiously repair the Older iPhone Models were the direct and proximate cause of

24   PLAINTIFFS' and Class Members' damages and were outside the scope of its duty of reasonable

25

26   care to its customers.

27

28

**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION**

286.   Defendant's design defect and its attempt to repair the iPhone defect caused damage to PLAINTIFFS and Class Members through interference with the functionality of the Older iPhone Models; diminution in the value and usefulness of the Older iPhone Models, through the inducement and enticement of PLAINTIFFS and Class Members to purchase newer iPhone Models; as well as costs incurred to diagnose and repair the slow operation of Older iPhone Models.

287.   As a direct and proximate result of Defendant's breach of its duty of reasonable care to PLAINTIFFS, PLAINTIFFS suffered damages including: loss of productivity; loss of performance, speed, and capability; diminution and depreciation of the value of the Older Model iPhones; being overcharged for defective Older Model iPhones; being denied the opportunity to meaningfully consider alternative purchases; loss of moneys spent to diagnose and repair the Older Model iPhone's sluggish performance; the cost of replacing Older Model iPhones with newer model iPhone's or competitors offerings in order to realize good performance; the cost of the Older Model iPhones themselves; the cost of paying for new batteries and their installation by Defendant.  These damages were directly and proximately caused by Defendant's fraudulent misrepresentations and omissions and but for Apple's concealment of the defects of its iPhone product, PLAINTIFFS would not have purchased Apple iPhones, and would have been reimbursed for the cost to repair or replace Apple iPhones if they had.

288.   Based on these repeated and ongoing violations of Defendant's duty of reasonable care to PLAINTIFFS and the Class, PLAINTIFFS and the Class seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant as well as any sums spent to purchase a newer model iPhone to replace Older Model iPhones.  PLAINTIFFS also seek any

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

other attorneys' fees, costs, awards, actual, restitutionary, compensatory or consequential damages or orders as this Honorable Court may deem just and proper.

**XVIII. THIRTEENTH CAUSE OF ACTION: California Common Law Trespass to Chattels**.

289.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 288 of this Complaint, as though set forth in full herein.

290.    PLAINTIFFS assert this cause of action individually on behalf of themselves and on behalf of the Class Members.

291.    California's common law of trespass to chattels prohibits the intentional intermeddling with personal property in the possession of another individual, without that other individual's informed consent, that causes a deprivation of the use of the personal property and/or the impairment of the condition, quality or usefulness of the personal property of the other individual.

292.    PLAINTIFFS and Class Members own and possess or have owned and have possessed Older Model iPhones.

293.    Defendant knowingly and intentionally interfered with PLAINTIFFS and the Class Members' use, enjoyment and possession of PLAINTIFFS' and the Class Members' Older Model iPhones by implementing features in the release of iOS 10.2.1 and iOS 11.2.0 which had the effect of diminishing the performance of the processors which powered the Older Model iPhones, resulting in a slowing down the operation of PLAINTIFFS' and Class Members' Older Model iPhones and which significantly impaired the condition, quality and usefulness of PLAINTIFFS' and Class Members' Older Model iPhones.

294.    Defendant never sought consent from PLAINTIFFS and the Class Members; PLAINTIFFS and the Class Members never gave their consent; and, Defendant never received consent from PLAINTIFFS and the Class Members to interfere with and slow down the operation of PLAINTIFFS' and Class Members' Older Model iPhones.  In fact, Defendant never provided any notice at all of the same, whether or not consent of the PLAINTIFFS and the Class was sought and additionally, and undertook great efforts to insure that PLAINTIFFS and the Class never learned of Defendant's intermeddling and interference with the Older Model iPhones.

295.    PLAINTIFFS and Class Members have lost the use and value of their Older Model iPhones since the processing speed of the Older Model iPhones has been significantly reduced which in turn has caused applications and programs to perform poorly on those Older Model iPhones.

296.    As a direct and proximate result of Defendant's trespass and intermeddling with PLAINTIFFS Older Model iPhones  PLAINTIFFS suffered damages including: loss of productivity; loss of performance, speed, and capability; diminution and depreciation of the value of the Older Model iPhones; being overcharged for defective Older Model iPhones; being denied the opportunity to meaningfully consider alternative purchases; loss of moneys spent to diagnose and repair the Older Model iPhone's sluggish performance; the cost of replacing Older Model iPhones with newer model iPhone's or competitors offerings in order to realize good performance; the cost of the Older Model iPhones themselves; the cost of paying for new batteries and their installation by Defendant. Were it not for Defendant's trespass, interference and intermeddling with PLAINTIFFS personal property, PLAINTIFFS would not have incurred the damages they did and had they known of the trespass, interference and intermeddling, would not have purchased Defendant's iPhone products.

297.    Based on the repeated trespass, intermeddling and interference by Defendant, PLAINTIFFS seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement of those sums used to purchase Older Model iPhones from Defendant as well as any sums spent to purchase a newer model iPhone to replace it.  Additionally, Plaintiff seeks disgorgement of all sums paid by Plaintiff Class to purchase AppleCare+ warranties.

298.    Trespass is an intentional tort.  Accordingly, PLAINTIFFS further respectfully request that this Honorable Court order Defendant to pay punitive damages to PLAINTIFFS pursuant to California *Civil Code* §3294(a).  On information and belief, PLAINTIFFS alleges that Defendant's actions were intentional, fraudulent, oppressive and malicious, and were committed with the specific intent of causing PLAINTIFFS injury and damage and/or were in conscious disregard of PLAINTIFFS' rights.  Accordingly, PLAINTIFFS are entitled to recover exemplary and punitive damages in an amount to be proved according to prove at trial.

299.    The actions of Defendant were (1) fraudulent, meaning an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendant with the intention on the part of the Defendant of thereby depriving a person of property or legal rights or otherwise causing injury; (2) malicious, meaning conduct which is intended by the Defendant to cause injury to PLAINTIFFS or despicable conduct which is carried on by the Defendant with a willful and conscious disregard of the rights or safety of others; (3) and/or oppressive, meaning despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; and done with the intention of depriving PLAINTIFFS of substantial rights. PLAINTIFFS are therefore entitled to punitive damages in a sufficient amount to make an

example of, punish Defendant, and deter future fraudulent, oppressive and malicious misconduct in an amount according to be proven at trial.

300.    On information and belief, PLAINTIFFS allege that the corporate Defendant' officers, directors and/or managing agents authorized and ratified the actions of the corporate Defendant, Apple Inc., in making the unlawful falsehoods and misleading statements that were perpetuated by Defendant regarding the defects and under-performance of the Older Model iPhones during the Relevant Time Period and continuing to this day.  This marketing decision was necessarily carried out by Defendant Apple's high ranking officers, directors and/or managing agents given that such illegal marketing practices committed Defendant to a course of conduct that violates California laws to the significant pecuniary detriment of PLAINTIFFS, and significant pecuniary gain to Defendant.

301.    Therefore, PLAINTIFFS ask for relief as set forth below and are entitled to injunctive relief, restitution, damages, civil penalties, punitive damages and attorneys fees in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Honorable Court.

**XIX.   FOURTEENTH CAUSE OF ACTION: Unjust Enrichment.**

302.    PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 301 of this Complaint, as though set forth in full herein.

303.    PLAINTIFFS assert this cause of action individually on behalf of themselves and on behalf of the Class Members.

304.    Defendant's acts and omissions enriched Defendant by intentionally and surreptitiously slowing PLAINTIFFS' and Class Members' Older Model iPhones in order to

93

conceal design defects in order to preserve and spur sales of its Older Model iPhones, and to cause PLAINTIFFS to discard their Older Model iPhones sooner and to purchase newer model iPhones more frequently than they otherwise would have.

305. Defendant's acts and omissions in issuing iOS updates and slowing the operation of PLAINTIFFS' and Class Members' Older Model iPhones increased Defendant's profits at the expense of PLAINTIFFS and Class Members because of the degradation in speed and performance of their Older Model iPhones designed to increase turnover of the Older Model iPhones and to induce and motivate PLAINTIFFS to purchase newer model iPhones sooner.

306. Defendant was also unjustly enriched because it did not and has not paid the full costs to repair or replace each defective phone, and because it reaped the same price for non-defective products as the defective Older Model iPhones which it sold to PLAINTIFFS and because it did not have to pay out warranty claims under its 1-Year Warranty or the AppleCare+ Warranty because it concealed the defects from PLAINTIFFS who could not avail themselves then of the warranties which Defendant then did not have to pay and did not pay. Defendant was also unjustly enriched for each and every battery that each and every Member of the Class purchased to repair their defective Older Model iPhones.

307. Defendant has accepted, retained and been unjustly enriched as a result of the benefits received in the form of profits from the unjust sale of Older Model iPhones.

## XX. FIFTEENTH CAUSE OF ACTION: Violation of the *Computer Fraud and Abuse Act.* (18 U.S.C. § 1030 *et seq.*)

308. PLAINTIFFS refer to and incorporate by this reference, paragraphs 1 through 307 of this Complaint, as though set forth in full herein.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

309.   PLAINTIFFS bring this action on behalf of themselves and those affected Class Members.

310.   The *Computer Fraud and Abuse Act* (the "Act") was instituted by Congress to prevent, confront and redress unauthorized access of protected computers by individuals and entities seeking to perpetrate fraud, cause damages, or remove valuable information from those computers.

311.   18 U.S.C. § 1030(e)(1) defines computer as "...an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device..."

312.   In this case it is evident that the Older Model iPhones, built by Defendant, a computer-manufacturer, are a computer as defined in the Act because they are an electronic high speed data processing device which performs logical, arithmetic and storage functions. 18 U.S.C. § 1030(2) further defines "protected computer" as any computer "...which is used in or affecting interstate or foreign commerce or communication..."

313.   The Older Model iPhones are protected computers because they are computers, capable of any function that any other computer is capable of including accessing the internet, sending and receiving emails, running programs and applications and performing calculations and exchanging data and are further protected computers because they are able to access the internet across the channels of interstate commerce and are capable of sending and receiving, and in fact at all times did access the interest across the channels of interstate commerce and did send and receiving telephone calls, emails, and text messages, and images and video records, and did

facilitate the exchange of money and the purchase of goods and services across interstate lines and used channels of interstate commerce to do so.  Smart-phones such as Defendant's iPhone is a powerful, portable computing devices with telephonic capabilities, rather than the obverse.

314.    18 U.S.C. § 1030(g) additionally provides that "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.  A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses?[5] (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(I)." This section of the act gives rises to a private cause of action for damages, equity and restitution so long as Defendant's actions hereunder caused "... loss to 1 or more persons during any 1-year period.... aggregating at least $5,000 in value..."

315.    In this case PLAINTIFFS and as many as 200 million former and current Apple customers whose claims aggregate to well above $5,000.01 in value.

316.    18 U.S.C. § 1030(4) also codifies those acts by Defendant which are in violation of the Act, including: "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period."

317.    Lastly, 18 U.S.C. § 1030(5) (A) provides that it shall be a violation of the act for Defendant to: "...knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; (B) intentionally accesses a protected computer without authorization, and

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

as a result of such conduct, recklessly causes damage; or (C) intentionally accesses a protected

computer without authorization, and as a result of such conduct, causes damage and loss."

318.    In this case Defendant did expressly violate subsections 4 and 5(A) and (C) of the

*Computer Fraud and Abuse Act* when it surreptitiously and intentionally accessed PLAINTIFFS'

Older Model iPhones by imbedding code and commands within iOS10.2.1 and 11.2.0 under the

auspices of a routine operating system update, which defrauded the PLAINTIFFS by fraudulently

concealing the existence of the iPhone processor/battery defect and further defrauded

PLAINTIFFS by making undisclosed alterations and reductions to the performance of

PLAINTIFFS devices.  If PLAINTIFF had ever given authorization for Defendant to access its

Older Model iPhones, that authorization for access did not include within its scope, surreptitious

additions of code which diminished the performance and capabilities of the Older Model iPhones

with the intent to conceal the existence of material hardware defects in Apple's Older Model

iPhone.

319.    Defendant's intentional access beyond the scope of authorization granted by

PLAINTIFFS did result in damages and losses to PLAINTIFFS, who unaware of the transmittal

of lines of code which artificially hobbled the performance of the Older Model iPhones. Damages

to PLAINTIFFS and Members of the Class proximately caused by Defendant's violation of the

Act include: loss of productivity; loss of performance, speed, and capability; diminution and

depreciation of the value of the Older Model iPhones; being overcharged for defective Older

Model iPhones; being denied the opportunity to meaningfully consider alternative purchases; loss

of moneys spent to diagnose and repair the Older Model iPhone's sluggish performance; the cost

of replacing Older Model iPhones with newer model iPhone's or competitors offerings in order to

realize good performance; the cost of the Older Model iPhones themselves; the cost of paying for

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

new batteries and their installation by Defendant. These damages were directly and proximately caused by Defendant's unauthorized access to the Older Model iPhones.

320.    Based on these repeated violations of the *Computer Abuse and Fraud Act* PLAINTIFFS seek an order enjoining the above-described wrongful acts and practices of Defendant and for restitution and for any actual or foreseeable or consequential damages resulting from Defendant's violation of the Act as well as any fees imposed by the Act.  PLAINTIFFS also seek any other attorneys' fees, costs, awards, actual, restitutionary, compensatory or consequential damages or orders as this Honorable Court deems just and proper.

## XV.    CONCLUSION.

321.    Apple's course of conduct has oft been repeated by companies looking to skirt the ramifications of their mistakes. In doing so, Apple chose to pass the damages resulting from its negligence along to its customers, and in the midst of doing so, attempted to turn an initial disaster into even greater sales of its most expensive smart-phones.  Mere moments after proposing its software slowdown to mask the material design defects plaguing hundreds of millions of iPhones, Apple realized that the slowdown could be used to spur more sales as it would be nearly impossible for Apple consumers to quantify and credibly call out the sluggish performance of their devices.  For nearly a year Apple got away with both concealing its staggering mistakes, while spurring sales of its flagship model iPhones as customers sought to replace their artificially hobbled models with seemingly faster units; all the while continuing to misrepresent the defect-free quality of Defendant's iPhone products, as well as exaggerating their performance specifications to consumers who relied on information published by Apple when choosing to spend their hard-earned money.  It was only by chance that a group of software

engineers caught on to what Apple had done and only when confronted with irrefutable proof did Apple partially admit to a scheme intended from the outset to defraud its customers and line its pockets. The true irony is that it was the undisclosed side-effects of the software slowdown, not the defect it sought to repair, that ultimately unveiled Defendant's ruse.

322.    Apple has made several partial apologies, but has only continued to mislead PLAINTIFFS, the Class and the consuming public by failing to disclose the material hardware defects in its products and attempting to placate its customers with a battery replacement that only temporarily treats the symptoms of that defect–hoping to buy enough time for users to discard their present iPhone models, and upgrade to newer model iPhones which do not have the defect.

323.    In reality, Apple is not sorry, and has never been sorry, because its profits and revenue are up and its shareholders are happy, and Apple would have gladly perpetuated this scheme in perpetuity, pulling one over on PLAINTIFFS, the Class and the consuming public while tricking them into discarding their old hobbled iPhones and purchasing Apple's newest and most expensive iPhones.

324.    Even prior to this present action, Apple announced that it plans to continue to apply the software slowdown to future models and to other devices. While Apple claims it is only doing so to "...deliver the best experience for [its] customers..." that narrative rings false as its competitors do not have to artificially slowdown their phones provide their customers with the same experience and routinely design batteries that keep pace with their processors now and in years to come.  And with Apple's new, most expensive iPhone ever, the iPhone X, recently offered for sale at an astonishing $1,000 per iPhone, PLAINTIFFS cannot help but note the serendipitous timing of the December, 2017 iOS 11.2.0 slowdown, and the unleashing of Apple's fastest, and most expensive, phone ever.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

**PRAYER FOR RELIEF**

PLAINTIFFS, on behalf of themselves and the Class Members, respectfully pray that this Honorable Court enter judgment as follows:

1.      Granting compensatory damages in an amount to be proven at trial and such other orders and judgments which may be necessary to disgorge Defendant' ill-gotten gains and to restore to any person in interest any excess money paid for Defendant' Older Model iPhones; restore to any person in interest any sums expended to purchase a newer iPhone to replace their Older Model iPhone; restore to any person in interest any sums expended to repair, replace batteries or to diagnose issues stemming from the iPhone battery/processor defect or from the software slowdown; and/or restore to any person in interest sums expended in purchasing AppleCare+ warranties as a result of the unlawful conduct of Defendant as well as any other reasonably foreseeable compensatory, restitutionary, actual or consequential damages suffered by PLAINTIFFS and Members of the Class.

2.      Granting pre-judgment and post-judgment interest at the legal rate thereon.

3.      Granting punitive damages in an amount to be proven at trial.

4.      An order (A) enjoining Defendant from artificially decreasing the performance of PLAINTIFFS' and Class Members' iPhones and other products sold by Defendant as well as an order preventing Defendant from making undisclosed, unpublished changes to the operation of PLAINTIFFS' and Class Members' iPhones; (B) requiring Defendant to provide clear and conspicuous disclosures as to all aspects of future iOS software updates and precisely how the software updates will effect the performance, if at all, of PLAINTIFFS' and Class Members' iPhone products; (C)  requiring Defendant to disclose all information, correspondence relating to

100

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,<br>DAMAGES AND RESTITUTION

the defects in the Older Model iPhones and the software slowdown, as well as any information related to spurring sales of newer iPhones; and  (E) an order enjoining Defendant from advertising and marketing its products in any deceptive, unfair or misleading manner.

5.      Granting costs of suit incurred herein including a reasonable attorneys' fee.

6.      Granting restitution in an amount to be proven at trial.

7.      Civil Penalties in the amount of $2,500 for each violation of California *Civil Code* § 1780(b)1 that impacted a Senior Citizen or a Disabled Person.

8.      Civil Penalties in the amount of $5,000 for each violation of California *Civil Code* § 1780(b)1 that impacted a Senior Citizen or a Disabled Person.

9.      Attorneys' fees pursuant to California *Business and Professions Code* § 17200.

10.     An order enjoining Defendants' unfair, false and misleading business activities pursuant to California *Civil Code* § 1780(a)(2).

11.     Restitution pursuant to California *Civil Code* § 1780(a)(4), in an amount to be proven at trial,

12.     Any other relief this Honor Court deems appropriate pursuant to California *Civil Code* § 1780(a)(4), in an amount to be proven at trial,

13.     Punitive damages pursuant to California *Civil Code* § 3294, in an amount to be proven at trial.

14.     Granting such other and further relief that this Honorable Court deems just and proper.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 (ba) of the *Federal Rules of Civil Procedure*, and *Local Rules* of this

Honorable Court, PLAINTIFFS respectfully demand trial by jury on all issues so triable.

Respectfully submitted,

Dated: February 5, 2018.          HOBSON, BERNARDINO & DAVIS, LLP
                                  Rafael Bernardino, Jr.          SBN    118690
                                  Jason A. Hobson               SBN    184134
                                  Andrew Kierstead             SBN    132105
                                  Peter Wasylyk                 Pro Hac Vice

                                  /s/ Rafael Bernardino, Jr.
                                  _____
                                  By Rafael Bernardino, Jr.
                                  444 South Flower Street, Suite 3100
                                  Los Angeles, California 90071
                                  Telephone:     (213) 235-9190
                                  Facsimile:      (213) 235-9197
                                  rbernardino@hbdlegal.com
                                  Jhobson@hbdlegal.com
                                  Akierstead@hbdlegal.com
                                  pwasylak@hbdlegal.com

                                  Marc R. Stanley
                                  Martin Woodward
                                  STANLEY LAW GROUP
                                  6116 North Central Expressway, Suite 1500
                                  Dallas, Texas 75206
                                  Telephone:     (214) 443-4300
                                  Facsimile:      (214) 443-0358
                                  marcstanley@mac.com
                                  Mwoodward@stanleylawgroup.com

                                  Attorneys for Plaintiff
                                  NICHOLAS FORD

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF,
DAMAGES AND RESTITUTION